## John Hancock Mut. Life Ins. Co. v. Tabb

(Decided Feb. 1, 1938.)

PETER, HEYBURN, MARSHALL & WYATT for appellee.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—Reversing.

By a contract supplementary of a life insurance policy issued to the late Cary Tabb, a prominent lawyer of Louisville, the appellant bound itself to pay his widow, the appellee, Mrs. Jeannette P. Tabb, $2,500 upon proof that his death was caused "solely by external, violent and accidental means." However, there are some exceptions, one of which is:

> "This provision for benefit shall not apply if the death of the insured results directly or indirectly * * * from homicide. * * *"

In this suit by the beneficiary to recover under this contract the company assumed the burden of establishing Mr. Tabb's death to have been the result of homicide. When it had completed the presentation of its evidence, both parties moved the court to peremptorily instruct the jury. The plaintiff's motion was sustained, and a verdict was accordingly returned for the amount of the indemnity. The appeal is brought upon the ground that the evidence established as a matter of law that the death of the insured was the result of homicide, or, at least, was sufficient to authorize the submission of the question of fact to the jury.

In the late afternoon of December 3, 1934, Mr. Tabb left his office and stopped at a bank for a consultation with its president. He left the bank alone at 6:10 o'clock, carrying a small package, the contents of which have never been ascertained, his portfolio of papers, and an umbrella. He boarded a street car, and after alighting at Longest avenue probably took a bus out Grinstead drive. He then traveled a footpath which leads up a hill some 200 feet to Crosshill road, and then beyond to Tophill road, on which his home was situated. The path is a shortcut leading through a sparsely built-up residential district. It ran between high hedges or other vegetation, and was quite secluded. It was a misty, rainy night, and the path was very dark.

Shortly before 7 o'clock a colored woman, employed as a maid in the neighborhood, came down the path and found Mr. Tabb lying in or across it. Without recognizing or disturbing him, she quickly ran to a nearby residence and gave an alarm. Mr. Addams returned with her. They found Mr. Tabb lying unconscious on his back. His overcoat was unbuttoned and thrown back; his pockets were turned inside out; his money and watch were 'gone; his hat, spectacles, newspaper, and umbrella were scattered about. The papers he had had in his portfolio were scattered around loose over the scene. The package he was carrying when he left the bank and had on the street car was not to be found. Mr. Tabb had been struck on the back of the head. His skull was bashed in so badly that the bones were driven into his brain by a blow which the physicians stated was applied with "a great deal of force," and with "tremendous force." The injured man was removed to a hospital where he died three days later without having regained sufficient consciousness to speak.

The police were quickly on the scene; but to this day the mystery of who killed Mr. Tabb has never been solved.

The company also introduced in evidence the death certificate, which is by statute made prima facie evidence of the facts therein stated. Section 2062a-21, Statutes. The certificate stated that Mr. Tabb's death was caused by a "fractured skull"; that the "manner of injury" was "slugged by hold-up person"; and that his death was due to "homicide." The appellee's counsel very ably attack this certificate as competent evidence upon several grounds resting upon their interpretation of the statute. Without determining the questions raised, we will disregard the certificate and base our decision upon the other evidence.

The appellee seems to appreciate the strong probative force of the circumstances as showing that the insured's death was caused by an assault for the purpose of robbery. Her counsel submit, however, that it was incumbent upon the insurance company to prove that the death could not have been caused by the insured having accidentally fallen, or by any act not embraced in the meaning of the word "homicide" as intended by the contract. Without such conclusive

negative evidence, it is argued, the mystery is left to surmise and conjecture, and a case will not, under our rules of practice, be submitted to a jury to reach a verdict by such process; hence, the burden resting upon the insurance company was not met, and the court properly decided the case as a matter of law.

The suggestion of accident rests upon the fact that the footpath was slippery and uneven, and there were numerous jagged rocks in and at the edge of it; that the physicians in the course of their examination expressed the opinion that the crushing blow the insured suffered might have been caused by being struck with a blunt instrument or "from a very severe fall." Coupled with such statements are answers of the doctors which seem merely to avoid expressing an opinion on matters outside their sphere, such as that their patient was the victim of an assault, or murdered. We think the circumstances and conditions otherwise inexplicable are of such great force as to destroy the tenuous theory of an accidental fall.

Concerning the meaning of "homicide" as used in the policy, the appellee points out that the term is susceptible of various definitions, since the primary or basic meaning is the killing of one person by another without regard to the purpose or manner. It is therefore said to be ambiguous and to require the application of the rule of construing insurance contracts most strongly against the company. As to such general definition and rule there can be no difference of opinion.

But the context and association must be considered in ascertaining the meaning intended. We are dealing with an accident insurance policy of limited coverage. Whether it would exclude death as the result of gross negligence, e. g., by being struck by an automobile under such circumstances as to constitute manslaughter, or by the act of an insane person, which is ordinarily regarded as an accident so far as the insured is concerned (1 C. J. 443; Jefferson Standard Life Insurance Company v. Myers, Tex. Com. App., 284 S. W. 216), we need not determine. We concur in the conclusion of other courts that exclusion from liability for indemnity where death is the result of homicide does embrace an intentional killing. Jefferson Standard Life Insurance Company v. Myers, supra; Great Southern Life Insurance Company v. Campbell, 148 Miss. 173, 114 So. 262, 56 A. L. R. 681; Day v. Interstate

Life & Accident Company, 163 Tenn. 190, 42 S. W. (2d) 208; Texas Life Insurance Company v. Plunkett, Tex. Civ. App., 75 S. W. (2d) 313. But any observation as to another meaning of "homicide" or any extension of our construction of it being an "intentional killing" where the circumstances may be different from those in the case at bar would be but dictum. We confine our interpretation by expressing the opinion that the exclusion embraces the ordinary meaning of intentional homicide, that is, a felonious killing of a man. The same conclusion was reached in Black v. Massachusetts Accident Company, R. I. 189 A 3, where the policy excluded death caused by "homicide" and the insured was shot by a robber in a holdup of several men in a gambling establishment. The insurance company was held not liable.

Under such a construction, we are not willing, however, to follow counsel for appellee by saying that it was incumbent upon the insurance company to prove that Mr. Tabb's death resulted from an act of another person done with the specific intent to kill him—that the man who struck the mortal blow intended to kill Cary Tabb and no one else and for no other purpose. Cf. Jefferson Standard Life Insurance Company v. Myers, 256 Ky. 174, 75 S. W. (2d) 1095. Nor can we adhere to the extreme suggestion that the company must have proven that his death was without the shimmering possibility that it was at the hands of a person without mental capacity enough to have understood the the nature of his act; that is, an insane person. There is no presumption of insanity, and its establishment is an affirmative defense. Younger v. Com., 258 Ky. 766, 81 S. W. (2d) 595.

It seems to us that it was shown beyond a doubt that Mr. Tabb's death was the result of a felonious killing; that it was caused by one intent upon robbery, which, under elementary law, is murder; and that such cause was explicitly excluded from coverage of the insurance policy. The terms of the contract must measure the rights of the parties. It follows, therefore, that the court was in error in its ruling, and that the peremptory instruction should have been to the jury to find a verdict for the defendant insurance company.

Judgment reversed.

Whole court sitting, except Stites, C. J.