Brenda MEYERS and Donnie Meyers, Appellants.

v.

KENTUCKY MEDICAL INSURANCE COMPANY, Appellee.

No. 96–CA–3316–MR.

Court of Appeals of Kentucky.

Dec. 31, 1997.

Discretionary Review Denied by Supreme Court Aug. 26, 1998.

Lee E. Sitlinger, John K. Carter, Louisville, for Appellants.

Mark G. Arnzen, David A. Futscher, Covington, for Appellee.

Before BUCKINGHAM, COMBS and GARDNER, JJ.

## OPINION

COMBS, Judge.

Brenda Meyers and Donnie Meyers (hereinafter "the Meyerses") appeal from orders of the Jefferson Circuit Court that held that a policy of insurance issued by the appellee, Kentucky Medical Insurance Company (hereinafter "KMIC"), to Tri–County Surgical Associates, P.S.C., did not provide liability coverage for the Meyerses' medical malpractice claim. We affirm.

The facts in this case are not in dispute. On June 25, 1992, Brenda Meyers underwent surgery performed by Dr. Marc A. Marcum, an employee of Tri–County Surgical Associates, P.S.C. (hereinafter "Surgical Associates"). At the time of the procedure, both Dr. Marcum and Surgical Associates were insured by KMIC.[1] Following this surgery, the Meyerses filed a malpractice action against Marcum and Surgical Associates.[2] Before the action was filed, however, Marcum had left his employment with Surgical Associates, had canceled his professional liability policy with KMIC effective March 1, 1993, and had become an insured of PIE Mutual Insurance Company (hereinafter "PIE"). Both Marcum's new policy and Surgical Associates' continuing KMIC policy were "claims made" policies and afforded liability coverage limits of $1,000,000.00 each. The Meyerses claim damages in excess of those total cumulative amounts of $2,000,000.00.

At the time that Dr. Marcum canceled his coverage with KMIC, both he and his employer, Surgical Associates, were given an opportunity to purchase an extension contract which would have lengthened the time during which reported claims (that arose while Marcum was a KMIC insured and an employee of Surgical Associates) would be covered. KMIC explained to its insureds the consequence of not purchasing the offered extension contract. With respect to Surgical Associates, KMIC advised as follows:

> If the extension contract is not purchased by either party, your corporation/partnership *will have no coverage* in the event a claim is made for the acts of Dr. Marcum

---

1. Dr. Marcum was insured by KMIC under the insurer's Coverage A type insurance, and Surgical Associates was provided Coverage B type insurance at no charge. Coverage A type insurance provides medical professionals insurance protection from any claims made against them for which they may be liable due to acts or omissions of which they are deemed individually responsible. Coverage B insurance provides partnerships, corporations, or medical professional associations protection from any claims made against them for which they may be liable due to any acts or omissions by their employees.

2. The Meyerses' claims as they relate to Surgical Associates are based on the medical group's vicarious liability for the acts of Dr. Marcum, its employee.

while he was an employee of your corporation/partnership and insured with KMIC under a Modified Claims Made Policy. (Emphasis added).

Neither Dr. Marcum nor Surgical Associates paid the necessary premium to purchase the extension contract.

Despite Surgical Associates' failure to purchase the extension contract, once the Meyerses' complaint was filed, KMIC agreed to provide the medical group with a defense. KMIC explains that this service was offered as an accommodation since other physicians associated with Surgical Associates continued to be KMIC insureds under Coverage A, which provided Surgical Associates coverage under Coverage B. However, KMIC continued to advise Surgical Associates that it would provide no liability coverage to the medical group for the acts of Dr. Marcum. KMIC also advised Surgical Associates that it would not contribute to any settlement being negotiated by the Meyerses' counsel.

On October 13, 1995, Surgical Associates (*without KMIC's consent or approval*) entered into a settlement agreement with the Meyerses. The action was settled for $2,000,000.00. Dr. Marcum, his insurer (PIE Mutual Insurance Company), and Surgical Associates were released from liability in exchange for payment by PIE Mutual Insurance Company of its $1,000,000.00 policy limits. Pursuant to the agreement, Surgical Associates was *not required to make any payment* to the Meyerses. Instead, Surgical Associates assigned to the Meyerses any rights the medical group may have against KMIC under its professional liability policy. In exchange for this assignment of rights, Surgical Associates was released from any and all claims arising out of the underlying malpractice action. Upon execution of this agreement, the parties also entered an agreed order of dismissal with prejudice of the appellants' claims against both Dr. Marcum and Surgical Associates. Dr. Marcum did not acknowledge during the pendency of this action that he committed professional malpractice; and no judgment has ever been entered against Surgical Associates as a result of the malpractice action. Nevertheless, the settlement agreement and assignment of

rights formed the basis of the Meyerses' declaratory judgment action. Throughout this proceeding, the Meyerses have sought a declaration that KMIC's policy provided liability coverage for Surgical Associates under the facts of the underlying malpractice action and, in addition, a judgment against KMIC for the sum of $1,000,000.00.

In addition to the facts related to the appellants' underlying malpractice action, the trial court was also presented with evidence relative to the terms and conditions of KMIC's professional liability policy. In arriving at its judgment, the trial court considered the following KMIC policy provisions to be especially pertinent:

**Medical Professional Liability Insurance**

A. In consideration of the payment of the premium (or arrangements as provided by the *Company* to do so), receipt of which is hereby acknowledged, and subject to the limits of liability and the other terms, conditions, exclusions, waivers, exceptions, declarations and endorsements of this policy, the *Company* hereby agrees to defend and pay damages in the name and on behalf of the *Insured* or his or her estate because of:

**Coverage A, Individual Medical Professional Liability.** Any claim for damages made during the term of this policy, based upon medical professional services rendered or which should have been rendered, by the name *Insured* or any other person for whose acts or omissions the named *Insured* is legally responsible in the practice of the named *Insured's* medical profession (hereinafter "the *Insured* "), including service by the named *Insured* as a member of a formal accreditation or similar medical professional board or committee of a hospital or medical professional society.

**Coverage B, Partnership or Corporation Medical Professional Liability.** Any claims for damages filed during the term of this policy, based upon medical professional service rendered or which should have been rendered, by any person for whose acts or omissions the named *Insured* partnership, corporation or medical

professional association is legally responsible (hereinafter "the *Insured* ").

Notwithstanding any other language contained herein, the limits of liability under a policy providing Coverage B shall not be cumulative with *any* policy providing Coverage A. In the event of a claim against both an individual insured under Coverage A and a partnership, corporation or association insured under Coverage B of which the individual is or was at the time the professional services were rendered or should have been rendered an employee, shareholder or member, the *Company's* liability shall be limited to the limits of liability stated in the policy providing Coverage A only. The limits of liability under Coverage A and Coverage B do not "stack". (Emphasis added).

\* \* \* \*

**Except this policy does not cover:**

\* \* \* \*

5. \* \* \* \*

Under Coverage B, any claim for damages or liability based upon professional services rendered or which should have been rendered by any person for whose acts or omissions the named *Insured* is legally responsible in the event any liability arising from the same occurrence (medical incident) is covered under a policy issued by the *Company* providing Coverage A to an individual who is or was at the time the professional services were rendered or should have been rendered an employee, shareholder, or member of the partnership, corporation, or association;

6. Under Coverage B, any claim for damages or liability based upon or arising out of professional services rendered or which should have been rendered by any physician or dentist regularly employed by the named *Insured* or for whose acts or omissions the named *Insured* is legally responsible and who is not the named *Insured* in a policy issued by the *Company* providing Coverage A;

7. Under Coverage B, any claim for damages or liability based upon professional services rendered or which should have been rendered by a physician or dentist for whose acts or omissions the partnership,

corporation, or professional association is legally responsible, where as of the date of the filing of the claim, that physician or dentist is no longer a partner, employee, or otherwise associated with the partnership, corporation or professional association unless such physician or dentist shall continue as an *Insured* of the *Company* or unless an extension contract as set forth herein shall have been procured by or on behalf of such physician or dentist;

\* \* \* \*

F. In the event of a claim arising out of the same occurrence (medical incident) against both an individual insured under Coverage A by a policy issued by the *Company* and a partnership, corporation or association insured under Coverage B by a policy issued by the *Company*, where the individual insured under Coverage A is, or was at the time the professional services were rendered or should have been rendered an employee, shareholder or member of such partnership, corporation or association, the *Company's* liability shall be limited to the limits of liability stated in the policy providing Coverage A only. In no event shall the limits of liability under a policy providing Coverage B be aggregated with or added to the limits of liability under a policy providing Coverage A with respect to any claim arising out of the same occurrence (medical incident).

\* \* \* \*

G. In the event of either nonrenewal or cancellation of this contract by either party ..., the *Company* guarantees to offer the named *Insured* ... an extension contract. This contract shall extend the time for reporting claims to the *Company*, which would otherwise be covered except for the reporting requirement of Section A above....

The named *Insured* may accept the *Company's* offer of this extension contract by payment of the proper premium within 30 days of such billing. Lack of payment within the specified 30 days shall be deemed a rejection of such offer.

The trial court was also presented with uncontroverted evidence that Surgical Associ-

ates was not charged any premium for the coverage it was provided under KMIC's policy and the extension contract.

Considering the facts as presented, the policy language, and the applicable law, the trial court determined that there was no coverage available to Surgical Associates under the terms and conditions of KMIC's policy. As a result, summary judgment was entered in favor of KMIC on October 21, 1996. The appellants' motion to alter, amend or vacate the judgment was denied. This appeal followed.

Summary judgment is proper when, as a matter of law, it appears that it would be impossible for the non-moving party to produce evidence at trial warranting a judgment in his favor. *Steelvest, Inc. v. Scansteel Service Center, Inc.*, Ky., 807 S.W.2d 476 (1991). The issues of interest in this appeal are whether the insurance policy provides coverage to Surgical Associates and, if it is determined that the policy does afford coverage, whether the Meyerses, as the assignees of Surgical Associates, are entitled to judgment against KMIC.

The circuit court held that the terms of KMIC's policy unambiguously provided that the liability coverage afforded to Surgical Associates was not cumulative with *any* policy providing individual professional liability coverage. Since Dr. Marcum was not KMIC's insured at the time the plaintiffs' claims were made against him and because another carrier, PIE, provided individual coverage to Marcum equivalent to KMIC's maximum coverage, the court concluded that KMIC's Coverage B afforded to Surgical Associates was inapplicable.

In reaching its determination as to the coverage afforded, the trial court considered whether the terms of KMIC's liability policy were ambiguous when viewed in light of the circumstances presented. The court concluded as follows:

> Viewing the insurance policy as a whole, it is clear that [KMIC] intended that any insurance policy issued by any insurance company, as well as any insurance policy issued by [KMIC](,) which provides Coverage A type insurance be included under the provisions which limit the stacking of

Coverage B claims to the limits of liability stated in the policy providing Coverage A. Clause A, paragraph four, the policy states that "the limits of liability under a policy providing Coverage B shall not be cumulative with *any* policy providing Coverage A(.)" (Emphasis added).

In considering the language of KMIC's policy clause A, paragraph four, the court concluded that the terms of the policy plainly and effectively prevented the stacking of individual liability coverage with medical group or corporate liability coverage *irrespective of whether the policy providing individual coverage was issued by KMIC or was, as here, issued by another carrier.*

In addition to an examination of the plain language of this "anti-stacking provision," the trial court set out to distinguish the provisions of clause A, paragraph four, from other provisions of KMIC's policy. The court noted that clauses A.6 and F of the policy refer to "Coverage A by a policy issued *by the Company*" and that clause A.5 refers to "a policy issued *by the Company* providing Coverage A(.)" (Emphasis added). By emphasizing the verbiage contained in these latter provisions, the court observed that KMIC took care to refer in some instances specifically to policies issued by KMIC and in other instances to *any* policy without regard to which carrier issued it. The court decided that this observation confirmed the conclusion that the policy provision aimed at preventing the stacking of individual and medical group liability policies was clear and unambiguous when applied to the facts of this case. Finally, the trial court determined that the exclusions and limitations of the policy were valid and enforceable.

The Meyerses contend that the trial court erred in its interpretation of KMIC's policy provisions. They insist that a strict and literal interpretation of the policy requires KMIC to "make maximum liability coverage payment under 'Coverage A' of *its policy of insurance* before being able to limit any obligation which KMIC would otherwise have under 'Coverage B(.)'" At a minimum, they insist, KMIC's policy is ambiguous and Surgical Associates is entitled to have the lan-

guage construed in favor of the extension of coverage. The appellants also maintain that Surgical Associates is entitled to coverage either under the doctrine of reasonable expectations or under the theory that policy language attempting to limit or exclude coverage should be construed against the insurer. Finally, the Meyerses contend that the court's interpretation of the anti-stacking clause makes the coverage afforded to Surgical Associates illusory and, thus, unenforceable. Having considered the briefs, remarks made at oral argument, and the terms of the policy, we agree with the determinations made by the trial court and affirm.

■ At the time that the underlying malpractice action was filed, Dr. Marcum had in effect a valid "claims made" policy of insurance with PIE Mutual Insurance Company which provided under Coverage A $1,000,-000.00 of liability coverage.[3] We agree, then, that Surgical Associates was not entitled to any liability coverage under KMIC's Coverage B since the "limits of liability under a policy providing Coverage B shall not be cumulative with any policy providing Coverage A." Moreover, the policy provides that the *"Company's* liability shall be limited to the limits of liability stated in the policy providing Coverage A only" and the "limits of liability under Coverage A and Coverage B do not 'stack.' "

■ We are not persuaded by the appellants' argument that the phrase "any policy" should be construed to mean "any KMIC policy." This interpretation of the language of the policy tends to deviate from the intention of the parties and certainly serves to enlarge the risk of the insurer. We are cognizant of the admonition of the Kentucky Supreme Court set out in *St. Paul Fire & Marine Ins. Co. v. Powell–Walton–Milward,* Ky., 870 S.W.2d 223, 226 (1994):

> The rule of strict construction against an insurance company certainly does not mean that every doubt must be resolved against it and does not interfere with the rule that the policy must receive a reasonable interpretation consistent with the

parties' object and intent or narrowly expressed in the plain meaning and/or language of the contract. Neither should a non-existent ambiguity be utilized to resolve a policy against the company. We consider that courts should not rewrite an insurance contract to enlarge the risk to the insurer.

It is undisputed that had Dr. Marcum continued his association with Surgical Associates and remained a KMIC insured at the time the malpractice action was filed, KMIC's policy would have *excluded* coverage for the medical group. Pursuant to the policy's exceptions, the only coverage available to Marcum and to Surgical Associates would have been that provided through Marcum's individual Coverage A.

KMIC queries whether it is reasonable to assume that the parties intended a different result where, *prior to the filing of the claim,* Marcum left his employment with Surgical Associates, canceled his policy with KMIC, and became insured under a "claims made" policy with another carrier. The appellee argues that if the appellants' contention were accepted, "this change of circumstances would require KMIC to provide one million dollars of liability coverage to Surgical Associates under Coverage B, despite the fact that KMIC had not charged the medical group a premium for Coverage B and KMIC was no longer receiving Dr. Marcum's premiums for Coverage A." KMIC maintains that such a result would be absurd and contrary to the intentions of the parties. It contends that in order to prevent such a result, KMIC included specific exclusions in its policy.

Again, KMIC's policy provides that the policy does *not* cover:

> 6. *Under Coverage B, any claim for damages* or liability based upon or arising out of professional services rendered or which should have been rendered by any physician or dentist regularly employed by the named *Insured* or *for whose acts or omissions the named Insured is legally responsible and who is not the named*

---

**3.** Marcum's policy with PIE also designated individual coverage as "Coverage A" and Partner-

ship or Corporate coverage as "Coverage B."

*Insured in a policy issued by the Company providing Coverage A;*

7. *Under Coverage B, any claim for damages* or liability based upon professional services rendered or which should have been rendered by a physician or dentist for whose acts or omissions the partnership, corporation, or professional association is legally responsible, *where as of the date of the filing of the claim, that physician or dentist is no longer a partner, employee, or otherwise associated with the partnership, corporation or professional association unless such physician or dentist shall continue as an Insured of the Company or unless an extension contract as set forth herein shall have been procured* by or on behalf of such physician or dentist; (Emphasis added).

■ The Meyerses' claim for damages against Surgical Associates arose out of professional services rendered by Dr. Marcum "for whose acts or omissions" the medical group was legally responsible. *At the time the claim was filed,* Marcum was *not* the named insured in a policy of insurance issued by KMIC providing Coverage A; he was insured instead with PIE. Thus, under the facts presented, the exclusion number six specifically and unambiguously precludes liability coverage for Surgical Associates. Additionally, the provision serves to protect KMIC from the inconsistency of having to provide Surgical Associates with more coverage for a physician that it did not insure than it would have been required to provide if Marcum had remained a KMIC insured.

The language of the exclusion number seven is also pertinent. Because Marcum was no longer an employee of Surgical Associates or a KMIC insured as of the date of the filing of the claim, the medical group was not entitled to liability coverage for the physician's allegedly negligent acts. This provision served to protect KMIC from having to provide Surgical Associates more coverage for its vicarious liability for a physician not insured with KMIC than for one that is so insured.

We agree with KMIC's position that the exclusions set forth in the paragraphs numbered 5, 6, and 7 are consistent with the anti-stacking provision set forth in clause A, paragraph four, as analyzed by the trial court. KMIC's policy is internally consistent by excluding from Coverage B liability limits for a medical group's vicarious liability for the acts of a physician—regardless of whether the physician is insured with KMIC or whether he has his individual coverage with another malpractice carrier. We do not find that this construction of KMIC's policy renders Surgical Associates's coverage merely illusory. By virtue of Coverage B, the medical group is provided one million dollars of liability coverage if the claim made against it arises out of the acts or omissions of any employed medical professional *other* than an insured physician. In addition, Coverage B obligates KMIC to provide Surgical Associates with a defense to reported claims. The coverage afforded is both specific and definable; it is limited—but not illusory.

■ Finally, we find that the doctrine of reasonable expectations is inapplicable as there is no ambiguity. Surgical Associates is not uninsured because KMIC's policy is in any way ambiguous or because the policy breaches the medical group's reasonable expectations. The reasonable expectations doctrine is applicable only where the policy at issue is ambiguous. *Simon v. Continental Ins. Co.,* Ky., 724 S.W.2d 210 (1987). Since we have concluded that the policy provisions are not ambiguous, the doctrine cannot be invoked. Even so, were the reasonable expectations doctrine to apply, we have recently noted as follows:

Under controlling Kentucky law, the proper area of inquiry is what [the insureds] could reasonably expect in light of what they actually paid for, not what they personally expected or whether those expectations could be ascertained.

*Estate of Swartz v. Metropolitan Property and Casualty Co.,* Ky.App., 949 S.W.2d 72, 76 (1997). In light of all of the terms of the policy, Surgical Associates could not have reasonably anticipated coverage under the set of facts presented.

■ It is axiomatic that "the terms of an insurance contract must control unless [they] contraven[e] public policy or a statute."

*Cheek v. Commonwealth Life Ins. Co.,* 277 Ky. 677, 126 S.W.2d 1084, 1089 (1939). "[C]ourts cannot make a new contract for the parties under the guise of interpretation or construction but must determine the rights of the parties according to the terms agreed upon by them." *Id.* The Meyerses are correct in alleging that since it is the insurance company that prepares insurance contracts, such policies are "construed more strictly against the [them]" and that, therefore, "where there is room for a different interpretation, that most favorable to the insured . . . will be adopted." *Id. See also John Hancock Mut. Life Ins. Co. v. Tabb,* 273 Ky. 649, 117 S.W.2d 587 (1938). However, "[t]he rule that an ambiguity . . . is to be resolved against the insurer has no application to a term so clearly defined in the policy as to exclude coverage under the circumstances involved. . . ." *Aetna Life & Casualty Co. v. Layne,* Ky.App., 554 S.W.2d 407, 409 (1977). Furthermore, where the terms of an insurance policy are clear and unambiguous, the policy should be enforced as written. *Masler v. State Farm Auto. Ins. Co.,* Ky., 894 S.W.2d 633 (1995). Finally, "unambiguous and clearly drafted exclusions which are 'not unreasonable' are enforceable" under Kentucky law. *American Nat'l Bank and Trust Co. v. Hartford Accident and Indem. Co.,* 442 F.2d 995, 999 (6th Cir.1971).

KMIC's policy does not provide coverage for the claims against Surgical Associates. Its exclusions, when read in light of the entire policy, are unambiguous and reasonable; therefore, they are enforceable. *See American Nat'l Bank,* 442 F.2d at 999. As there are no genuine issues of material fact and coverage is excluded as a matter of law, the circuit court correctly granted summary judgment to KMIC.[4] *See Steelvest Inc. v. Scansteel Service Center Inc.,* Ky., 807 S.W.2d 476 (1991).

The judgment is affirmed.

All concur.

---

4. Given our view of the coverage issue, we need not consider whether the procedural posture of this case alone prevented the entry of judgment in the Meyerses' favor.