**OMNI INSURANCE COMPANY,**
Appellant,

v.

**KENTUCKY FARM BUREAU
MUTUAL INSURANCE
COMPANY, Appellee.**

**No. 1998–CA–001159–MR.**

Court of Appeals of Kentucky.

Sept. 3, 1999.

John H. McCracken, Bowling Green, for appellant.

Michael E. Krauser, Louisville, for appellee.

Before: HUDDLESTON, JOHNSON, and KNOPF, Judges.

*OPINION*

JOHNSON, Judge:

Omni Insurance Company (Omni) has appealed from the judgment of the Jeffer-

son Circuit Court entered on April 1, 1998, which summarily dismissed its claim against Kentucky Farm Bureau Mutual Insurance Company (Farm Bureau), for reimbursement of amounts paid by Omni on behalf of its insured, Mark Schupp (Mark). We reverse and remand.

The facts underpinning this appeal are not complicated. On May 11, 1992, Thomas Schupp (Thomas), purchased a 1983 Ford Escort automobile from an individual, John Jurasin (Jurasin), for his nineteen-year-old son, Mark. Thomas and Jurasin went to a branch of the Jefferson County Clerk's office where they completed a Vehicle Transaction Record (VTR) and the assignment portion of the Certificate of Title and filed the documents with the clerk to effect transfer of the automobile to Thomas. Also on that day, Thomas, or his wife, Judith Schupp (Judith), contacted their insurance agent and had the automobile added to an existing policy with their insurer, Farm Bureau.

Thomas's son, Mark, was in the United States Navy and stationed at Virginia Beach, Virginia. Mark came home for a short visit on May 16, 1992, at which time Thomas gave him possession of the automobile. Thomas and Mark went to the same branch of the county clerk's office where they completed and executed a VTR. Thomas could not complete the assignment and warranty of title section on the reverse side of the Certificate of Title as he had not yet received a Certificate of Title from the Kentucky Transportation Cabinet. Mark left the executed VTR with Thomas. Because they could not complete and file all the necessary papers to transfer title on that visit, Thomas gave Mark a proof of insurance card from Farm Bureau and a note which stated that Mark had his permission to drive the automobile. On May 23, 1992, after Mark had returned to Virginia, Thomas received the Certifi-

cate of Title. Thomas mailed the Certificate of Title to Mark, who in turn, signed the title and returned it to Thomas for filing with the clerk's office.[1] Thereafter, Mark obtained his own policy of liability insurance from Omni, which had an effective date of July 1, 1992.

In the early morning hours of July 2, 1992, Mark was involved in an automobile accident in Virginia. Later that day, and apparently before learning of the accident, Thomas took the VTR and the Certificate of Title to the clerk's office for filing. Thomas's signature on the assignment portion of the certificate was notarized on that day. The individuals injured in the accident sued Mark. Mark was defended by Omni, and the suit was ultimately settled.

On August 19, 1996, Omni filed a complaint in the Jefferson Circuit Court alleging that as title had not transferred to Mark at the time of the accident, it was entitled to "contribution or indemnity from Farm Bureau from [sic] all monies on which it has paid on behalf of Mark Schupp[.]"[2] Omni and Farm Bureau each moved for summary judgment. In its Memorandum and Order the trial court determined that delivery of the essential documents had been made from Thomas to Mark prior to the accident and that Thomas "was a conduit for filing [the VTR and the Certificate of Title] with the Clerk." The trial court further reasoned as follows:

> It is nonsensical to require Mr. [Thomas] Schupp to physically deliver the documents to Mark when Mark wanted to register the car in Kentucky. Once the documents were executed, the delivery requirement was met and Mr. Schupp became Mark's agent for the purpose of registering the car.
>
> The purpose behind the statute is to ensure dealers and buyers transfer title for purposes of liability insurance. The

---

1. The record is unclear as to whether Thomas signed the Certificate of Title before he mailed it to Mark, but clearly Thomas's signature was not notarized until July 2, 1992.

2. The record reveals that Omni expended close to $40,000 in payments to the persons injured in the accident and in expenses defending Mark.

actions of Mark and [Thomas] complied with that purpose. Accordingly, once Mark had executed the title and returned it to his father for filing, title effectively transferred.

The trial court granted Farm Bureau's motion for summary judgment and dismissed Omni's complaint. On April 14, 1998, the trial court denied Omni's motion to alter, amend or vacate its summary judgment. This appeal followed.

Omni argues, as it did in the trial court, that since transfer of title of the automobile was not accomplished until after the accident, Thomas still owned the automobile at the time of the accident. Omni contends that Thomas's ownership of the automobile required a determination that his insurer, Farm Bureau, was responsible for the payment of damages caused by the accident. Omni primarily relies on *Nantz v. Lexington Lincoln Mercury Subaru,* Ky., 947 S.W.2d 36 (1997), the latest case in a series of cases involving the issue of who owns a vehicle for purposes of automobile liability insurance. In that case, the dealer provided all the legal documents necessary for the purchaser to obtain title. The purchaser failed to file those documents with the county court clerk's office and also failed to obtain automobile liability insurance. After the purchaser was involved in an accident, the victims of that accident sued the dealer alleging that title had not passed and that the dealer was responsible for insurance coverage for the accident. In affirming a decision that the dealer was not liable, the Supreme Court discussed its previous holdings in *Rogers v. Wheeler,* Ky., 864 S.W.2d 892 (1993), and *Potts v. Draper,* Ky., 864 S.W.2d 896 (1993), and this Court's decision in *Cowles v. Rogers,* Ky.App., 762 S.W.2d 414 (1988), and held that when an automobile dealer has delivered to the purchaser those documents necessary to allow the purchaser to obtain title to the vehicle, its responsibility for insurance coverage "ceases." *Nantz,* 947 S.W.2d at 39. It further reasoned as follows:

To hold a commercial dealer responsible for a motorist who consciously chooses to disobey the law and drive his motor vehicle uninsured for nine months fails to reach the appropriate result in light of our established precedent. Unfortunately, this case demonstrates that it is possible for uninsured vehicles to be operated on the highways of this state for extended periods of time. While we agree that this is contrary to the public policy expressed in KRS 304.39–010(1) and KRS 190.033, for this Court to require dealers to honor the duties imposed on them within KRS 186A, as well as to further require them to take on the statutory responsibilities clearly left to the buyer, would not only circumvent the intent of our legislature, but would also amount to judicial activism which clearly falls outside this Court's constitutional authority.

*Id.*

■ Omni argues that in the case *sub judice* there was no delivery of the VTR and Certificate of Title as contemplated by *Nantz,* and as required to relieve Thomas of liability for injuries arising from the use of the vehicle. It contends that since Thomas, the transferor of the vehicle, retained possession of the VTR and the Certificate of Title at the time of the accident, Mark, unlike the purchaser in *Nantz,* could not effect transfer of the vehicle and Thomas remained liable for insuring the vehicle. We agree, although our reasoning is somewhat different.

KRS 186A.215 provides, in pertinent part, as follows:

(1) If an owner transfers his interest in a vehicle, he shall, at the time of the delivery of the vehicle, execute an assignment and warranty of title to the transferee in the space provided therefor on the certificate of title. . . . The transferor shall cause the application with the certificate of title attached to be delivered to the transferee.

. . .

(3) The application with its supporting documentation attached shall promptly be submitted to the county clerk as provided in KRS 186A.115, together with the required fees.

(4) If it comes to the attention of a transferor that a transferee did not promptly submit the necessary document within fifteen (15) calendar days to the county clerk as required by law in order to complete the transfer transaction, a transferor shall submit to the county clerk, in his county of residence, an affidavit that he has transferred his interest in a specific vehicle.... This subsection shall not apply to any transactions involving licensed Kentucky motor vehicle dealers.

"The purpose of [this] statute is to require the seller of a motor vehicle to take statutory steps to properly complete the sale and until this is done the seller will be considered the owner for the purposes of liability insurance. *Potts*, 864 S.W.2d at 900.

We appreciate the trial court's recognition that Thomas was "wearing two hats" in this transaction: He was the transferor of the vehicle; and, because of Mark's absence from the state due to active military duty, and because of their familial relationship, Thomas was acting as Mark's agent in procuring the title to the vehicle. However, even if, at the time of the accident, both Thomas and Mark had completed the necessary paperwork and the only remaining step was the filing with the county clerk, we would not necessarily concur with the trial court's conclusion that Thomas was absolved from any liability with respect to the vehicle. Unlike the statutory responsibilities of dealers, KRS 186A.215(4), clearly makes it the responsibility of the individual transferor, as well as the transferee, to see that the transfer is accomplished. *See also,* KRS 138.465. In any event, it is clear from the record that the assignment and warranty of title had not been notarized until July 2, 1992. Thus, Thomas, in his capacity as a transferor, had not completed the documents or "delivered" them as statutorily required prior to the accident.

While it is apparent that at the time of the collision, Thomas had "title" to and was the "owner" of the vehicle for insurance purposes, such does not require the result sought by Omni. That is, regardless of whether Thomas complied with the motor vehicle registration statutes, Omni agreed to protect its insured, Mark, against liability arising out of the use of the vehicle and charged him a premium for that protection. One of the purposes of the recording statutes is to protect the public from uninsured motorists. *Potts,* 864 S.W.2d at 900. In both *Potts* and *Rogers, supra,* cases in which the seller or transferor of an automobile was determined to be the owner of the vehicle for purposes of determining insurance coverage, the buyers had not obtained liability insurance coverage. In those decisions, the dealers' failure to comply with the titling statues, statutes designed in part to enforce the compulsory insurance laws, was determinative of the issue of whom was responsible for coverage. Where, as in the instant case, the buyer has obtained liability coverage, the issue is governed by the respective insurance policies.

Compulsory insurance laws are intended to protect the public at large who might otherwise suffer from being injured by uninsured motor vehicles. Compulsory insurance laws are not intended to protect other insurance companies. When the controversy is between two insurers, the liability for a loss should be determined by the terms and provisions of the respective policies without regard to the rights injured third parties might assert under a compulsory insurance law.

*Royal–Globe Insurance Companies v. Safeco Insurance Company of America,* Ky., 560 S.W.2d 22, 24–25 (1977); *see also, State Farm Mutual Automobile Ins. Co. v. Register,* Ky.App., 583 S.W.2d 705, 706 (1979) (where the "public policy of the

statute is satisfied," a dispute between insurers is determined by the insurance policies).

■ There is no question that Mark was the "owner" of the automobile as contemplated by his policy with Omni. Mark is listed as the "named insured" and as the "driver" on the declarations page of the policy. The Ford Escort is listed as the "covered vehicle." Under "Part 1—Liability," the policy defines "owned automobile" as "(a) a private passenger, farm or utility automobile described in this policy for which a specific premium charge indicates that coverage is afforded." Obviously, when Omni accepted Mark's premium and issued the policy, it did not do so conditioned upon Mark obtaining a Certificate of Title pursuant to Kentucky's titling and registration statutes within any prescribed time period.

■ Accordingly, we reverse the trial court's determination that Omni is primarily liable as a matter of law for the loss resulting from the July 2, 1992, accident. The matter is remanded for entry of a judgment apportioning liability between the two insurers according to their respective insuring contracts which contain "other insurance" clauses.

ALL CONCUR.