NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 13a0051n.06

No. 12-5714

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
*Jan 09, 2013*
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| GREAT AMERICAN ASSURANCE CO. | ) | |
| | ) | ON APPEAL FROM THE |
| Plaintiff-Appellant, | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE EASTERN |
| v. | ) | DISTRICT OF KENTUCKY |
| | ) | |
| AMERICAN CASUALTY CO. OF READING, | ) | O P I N I O N |
| PENNSYLVANIA, | ) | |
| | ) | |
| Defendant-Appellee. | ) | |
| | ) | |

BEFORE: SILER, SUTTON, and McKEAGUE, Circuit Judges.

**McKeague, Circuit Judge.** Great American Assurance Company ("Great American") appeals the district court's grant of summary judgment in favor of American Casualty Co. of Reading, Pa. ("American Casualty"). Because we conclude the district court accurately analyzed the effect of the insurers' conflicting policy provisions, we affirm.

**I.**

This is a coverage dispute between two insurance companies. Great American issued a general liability policy to the Redwood School & Rehabilitation Center ("Redwood"). Redwood is a licensed day care center that provides services for medically fragile children. The Great American policy also covered Redwood's employees.

The "Exclusions" section of the Great American policy excludes:

> Damages which are covered by other insurance in any other insurance
> policy whether collectible or not.

(Great American Policy GA000044, subsection 2.h., R. 19-1, Page ID # 347).

American Casualty issued "Healthcare Providers Professional Liability" policies to two nurses at Redwood, Amie Kristine Rich and Tracy M. Roell. The Rich and Roell American Casualty policies contain, in a section titled "Other Insurance and Risk Transfer Arrangements," a provision stating:

> If there is any other insurance policy or risk transfer instrument, including but not limited to, self-insured retentions, deductibles or other alternative arrangements ("other insurance"), that applies to any amount payable under this Policy, such other insurance must pay first. It is the intent of this policy to apply only to the amounts covered under this Policy which exceed the available limit of all deductibles, limits of liability or self-insured amounts of the other insurance, whether primary, contributory, excess, contingent, or otherwise.

(American Casualty Policy at GA 000048, R. 19-2, Page ID # 352).

On March 23, 2009, Elisabeth Collins, the mother of a child who received care at Redwood, sued Redwood, Rich, Roell, and two other individuals, Mary Spare and Pam Millay, in a Kentucky circuit court. Collins alleged that her son died while under the care of Redwood and the individual defendants.

Great American hired legal counsel and defended Redwood, Spare, and Millay from the *Collins* suit. It notified Rich and Roell that "no coverage was available" to them. After receiving notice that Great American was denying coverage, American Casualty hired counsel and defended Rich and Roell. Although American Casualty made demands on Great American to defend and indemnify Rich and Roell, Great American took the position that it had no such duty. Great American ultimately settled the claims against Redwood, Spare, and Millay. Thereafter, American Casualty reached a settlement on behalf of Rich and Roell.

Subsequently, Great American brought this diversity action against American Casualty alleging claims for contribution, breach of contract, and unjust enrichment. Great American asserts that it was not obligated to defend or indemnify Rich or Roell in the *Collins* suit and that it paid more than its fair share towards its settlement with Collins.

American Casualty counterclaims that Great American was the primary insurer for Nurses Rich and Roell and that the American Casualty policy was excess and triggered only after the Great American policy was exhausted. American Casualty's counterclaims include breach of contract/estoppel, equitable recovery, and declaratory relief. It asserts that it is entitled to recover the defense and indemnity costs it paid on behalf of Rich and Roell.

Great American next filed a motion for judgment on the pleadings, which the district court denied. The court first concluded that Rich and Roell, as Redwood employees, were covered under Great American's policy, and that they were also covered under their separate American Casualty policies. Next, the court concluded that the Great American policy provision did not operate as a true exclusion based on a "specific risk or activity." Rather, the court held that Great American's subsection 2.h. provision was a "standard" "other insurance" escape clause—as contrasted with a "non-standard" escape clause—and thus under Kentucky law, American Casualty's excess clause prevails. Accordingly, American Casualty had a duty to defend and indemnify Rich and Roell only after the Great American policy covering Rich and Roell had been exhausted.

After the court issued its order, American Casualty filed a cross motion for judgment on the pleadings in which it requested complete reimbursement and indemnity from Great American for the amounts American Casualty paid to defend and indemnify Rich and Roell. The district court

referred the motion to a magistrate judge, who subsequently recommended that American Casualty's

motion be converted to a motion for summary judgment, that summary judgment should be entered

for American Casualty on Great American's liability, and that American Casualty should receive an

award of $271,290.88 for defending and indemnifying Rich and Roell. Both parties filed responses

to the magistrate's Report and Recommendation. On May 23, 2012, the district court adopted the

Report and Recommendation and granted American Casualty's motion for summary judgment. This

appeal followed.

## II.

We review de novo the district court's grant of summary judgment. *Pennington v. State*

*Farm Mut. Auto. Ins. Co.*, 553 F.3d 447, 450 (6th Cir. 2009). Summary judgment is proper where

no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of

law. FED. R. CIV. P. 56(a). In considering a motion for summary judgment, the district court must

construe the evidence and draw all reasonable inferences in favor of the nonmoving party.

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Because this is a diversity case, we apply the substantive law of the forum state. *Pennington*,

553 F.3d at 450. In applying Kentucky law to the insurance contracts here, we "'follow the decisions

of the state's highest court when that court has addressed the relevant issue.'" *Id.* (quoting *Talley v.*

*State Farm Fire & Cas. Co.*, 223 F.3d 323, 326 (6th Cir. 2000)). If the state's highest court has not

directly addressed the issue, we must "'anticipate how the relevant state's highest court would rule

in the case and are bound by controlling decisions of that court.'" *Id.* (quoting *In re Dow Corning*

*Corp.*, 419 F.3d 543, 549 (6th Cir. 2005)). We also view intermediate state appellate courts'

decisions as persuasive unless it is clear the state's highest court would decide the issue differently. *Id.* (citing *In re Dow Corning*, 419 F.3d at 549).

**III.**

The parties do not dispute that the clause in the American Casualty policy was an excess clause. Thus, our task is to determine how the Kentucky Supreme Court would resolve the conflict between that excess clause and the conflicting clause in the Great American policy.

**A.**

Great American first argues that we do not need to resolve the conflict between the two policies at all because subsection 2.h. of its policy unambiguously excludes coverage for Rich and Roell. Great American relies on several Kentucky cases and a Sixth Circuit case upholding exclusion provisions based on their plain language. But we do not believe those cases control the issue here.

As noted by the district court, Great American's policy provision is not the kind of stand alone exclusion given effect by Kentucky courts. It "does not operate, as do most exclusions, to 'restrict and shape the coverage otherwise afforded' according to the risks insured against." *Great Am. Assur. Co. v. Am. Cas. Co. of Reading, Pa.*, 2011 WL 4688637, at *3 (E.D. Ky. Oct. 4, 2011) (quoting *Kemper Nat'l Ins. Co. v. Heaven Hill Distilleries, Inc.*, 82 S.W.3d 869, 871 (Ky. 2002)). For example, in *York v. Ky. Farm Bureau Mut. Ins. Co.*, 156 S.W.3d 291, 293 (Ky. 2005), the Kentucky Supreme Court upheld a policy exclusion that provided the insurer would not provide liability coverage for any person "[u]sing a vehicle without a reasonable belief that a person is

entitled to do so." The court concluded that "a plain reading of the exclusion reveals that it is an overarching exception to the policy coverage as a whole." *Id.*

The other cases Great American relies on similarly deal with exclusions that "restrict and reshape the coverage" according to the risks the policy insures against. *See Gen. Exch. Ins. Corp. v. Kinney*, 129 S.W.2d 1014, 1015 (Ky. 1939) (upholding exclusion for "'loss or damage due to confiscation or authorized destruction by duly constituted governmental or civil authorities' and loss 'while used in any illicit or prohibited trade or transportation'"); *Am. Nat. Bank & Trust Co. of Bowling Green, Ky. v. Hartford Acc. & Indem. Co.*, 442 F.2d 995, 999 (6th Cir. 1971) (upholding exclusion for "any loss effected directly or indirectly by means of forgery."); *K.M.R. v. Foremost Ins. Grp.*, 171 S.W.3d 751, 753 (Ky. App. 2005) (upholding exclusion for bodily injuries resulting from "any act or omission that is intended by any of you to cause any harm or that any of you could reasonably expect to cause harm").

In contrast to the types of exclusions discussed above, Great American's subsection 2.h. does not exclude coverage on the basis of a specific risk or activity, but rather attempts to limit coverage solely on the basis of the existence of other insurance. As noted by the district court, "[t]his is illustrated by the fact that Great American did provide coverage to nurses Spare and Millay, who stood in exactly the same shoes as Roell and Rich with respect to the *Collins* claims, the only difference being that those other two women did not have other insurance coverage." *Great Am. Assur. Co.*, 2011 WL 4688637, at *3.

Great American points out that there have been Kentucky cases upholding coverage exclusions for insurance purchased on the same risk. However, all but one of the cases Great

American relies upon involve fire insurance policies. This is significant because the public policy underlying other insurance exclusions in fire insurance policies is to prevent excessive insurance coverage, which in turn decreases the risk that individuals will burn down their own houses for the insurance proceeds. *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Howard*, 347 S.W.2d 510, 511 (Ky. 1961) ("'The object of nonliability clauses of this type is to prevent the moral hazard from being increased without the knowledge of the insurer . . . . When several policies exist upon the same property, the desire on the part of the insured to prevent destruction by fire is greatly decreased.'") (quoting *Cont'l Ins. Co. v. Riggs*, 126 S.W.2d 853, 855 (Ky. 1939)). Those same concerns are not present in this case where the other insurance at issue, American Casualty's policy, would not have paid anything until the liability owed exceeded the primary insurance coverage limits.

The one non-fire-insurance case Great American relies on, *Meyers v. Ky. Med. Ins. Co.*, 982 S.W.2d 203 (Ky. App. 1997), is also distinguishable. There, the policy at issue was a "claims-made" policy with an "anti-stacking" provision that prevented the insured from collecting on both individual and medical group liability policies.[1] The insurer in the case offered both types of coverage. The provision included a clause stating that the limits under one policy would not be cumulative with "any" policy providing individual coverage. The court interpreted this to include individual policies offered by other insurers. *Meyers*, 982 S.W.2d at 208-09. Great American says

---

[1]A "claims-made" policy is one that provides coverage only for claims made during the policy period, rather than for all insurable events that occur during the policy period. CAROLYN M. FRAME, 60 TEMP. L.Q. 165, 165 (1987).

this interpretation, which excludes coverage where the insured is already covered under another policy, should control in this case. We disagree.

First, the fact that the policy in *Meyers* was a "claims-made" policy distinguishes that case from this one. *See* 2 INSURANCE CLAIMS & DISPUTES 5TH § 7.1 n.2 (2012) ("a provision in a claims-made policy stating that there is no coverage for any act occurring prior to the effective date of the policy as to which other insurance is available has not been treated as an escape clause. It has been held to be a legitimate exception from coverage that will be given effect regardless of the existence of conflicting other insurance clauses in competing policies.") (citing *Chamberlain v. Smith*, 140 Cal. Rptr. 493, 501-02 (Cal. App. 1977)). Second, the *Meyers* court did not have to reconcile conflicting provisions in two separate insurance policies; rather it was merely interpreting what it concluded was the unambiguous language of a single policy. Third, we are supposed to anticipate how the Kentucky Supreme Court would rule in this case, and we "are bound by controlling decisions of that court." *Pennington*, 553 F.3d at 450 (quoting *In re Dow Corning Corp.*, 419 F.3d 543, 549 (6th Cir. 2005)). We can accept the holding of a state intermediate appellate court, in a case like *Meyers*, "unless we determine the highest court of the state would decide otherwise." *United States v. Philp*, 460 F.3d 729, 732 (6th Cir. 2006). For the reasons stated below, we believe the Kentucky Supreme Court would decide this case differently than the *Meyers* court decided the claims-made policy issue in that case.

**B.**

Rather than operating as an exclusion as Great American urges, we conclude that subsection 2.h. is appropriately classified under Kentucky law as an escape clause.[2] Kentucky has defined an "escape clause" as one which simply negatives any liability if other insurance is available to the insured. *Gov't Emp. Ins. Co. v. Globe Indem. Co.*, 415 S.W.2d 581, 582 (Ky. 1967). It has further delineated between "standard" and "non-standard" escape clauses. "Standard" escape clauses have been interpreted to "create[] a general disclaimer of risk solely due to the presence of other insurance." *Great Am. Ins. Co. v. Lawyers Mut. Ins. Co. of Ky.*, 492 F. Supp.2d 709, 714 (W.D. Ky. 2007).

---

[2]We note that with the exception of the *Meyers* case and the fire insurance cases, discussed above, the Kentucky cases relied upon by the parties are auto insurance cases. The parties do not point us to any professional liability coverage cases where the Kentucky courts have had to interpret competing excess and escape clauses from two different insurers' policies. The auto cases are the only Kentucky cases establishing the principles for interpreting such conflicts, and thus they are the cases we rely upon here. In any event, these same principles apply with equal force in a professional liability context such as this one. *See* 15 COUCH ON INSURANCE §§ 219:36; 219:37 (3d ed. 2012) (discussing escape clauses and the conflict between escape and excess clauses without distinguishing between auto, personal property, or professional liability policies). Moreover, the Kentucky Supreme Court decided *Government Employees*, a case we rely upon, prior to the Kentucky legislature's 1974 enactment of the MVRA, which created the "comprehensive compulsory insurance system" requiring Kentucky vehicle owners to have insurance. *Ky. Farm Bureau Mut. Ins. Co. v. Shelter Mut. Ins. Co.*, 326 S.W.3d 803, 812 (Ky. 2010). Additionally, *Empire Fire and Marine Ins. Co. v. Haddix*, which we also rely upon, was decided long after the compulsory insurance law was in effect. 927 S.W.2d 843, 845 (Ky. App. 1996). Thus, Kentucky's compulsory auto insurance law, and the public policies it is intended to protect, do not shape our interpretation of the contract provisions at issue here.

The "general" rule regarding primary insurance coverage with a standard escape clause in relation to another insurer's excess clause was stated in *Ohio Cas. Ins. Co. v. State Farm Mut. Auto. Ins. Co.*, 511 S.W.2d 671, 674 (Ky. 1974):

> It has been held that where the owner of an automobile or truck has . . . [primary coverage], and the additional insured also has a non-ownership policy which provides that it shall only constitute excess coverage over and above any other valid, collectible insurance, the owner's insurer has the primary liability. In such case, the liability of the excess insurer does not arise until the limits of the collectible insurance under the primary policy have been exceeded. *It should be noted that under this rule, the courts give no application to the other insurance clause in the primary policy, which provides that if the additional insured has other valid and collectible insurance, he shall not be covered by the primary policy. That is because the insurance under the excess coverage policy is not regarded as other collectible insurance, as it is not available to the insured until the primary policy has been exhausted.*

(quoting APPLEMAN INSURANCE LAW & PRACTICE § 4914) (emphasis added); *see also Motorists Mut. Ins. Co. v. Glass*, 996 S.W.2d 437, 453 (Ky. 1997) (citing *Ohio Cas. Ins. Co.* approvingly for this general proposition); 15 COUCH ON INSURANCE § 219.36 (3d ed. 2012) ("where the only collectible other insurance is a true excess policy, the escape clause does not relieve the insurer of primary coverage") (citing *Boudreaux v. Shannon Marine, Inc.*, 875 F.2d 511 (5th Cir. 1989) (applying Louisiana law)).

*Government Employees* recognized a carve out of this general rule by differentiating between standard and non-standard escape clauses. *See Gov't Emp. Ins. Co.*, 415 S.W.2d at 581 (classifying as non-standard a clause that "provided in effect that the policy would not cover a person other than the named insured and his employees, if other valid and collectible insurance, 'either primary or excess', was available to such person"). As further defined in subsequent decisions, non-standard

escape clauses expressly anticipate the possibility of other primary or excess insurance covering an act or omission and seek to contract against liability in a particular situation. *See, e.g., Empire Fire and Marine Ins. Co. v. Haddix*, 927 S.W.2d 843, 845 (Ky. App. 1996) (classifying as non-standard a clause that provided the insurance was excess "over any other collectible insurance or 'self insurance' available to 'you,' any 'member' or any 'insured,' whether such insurance or 'self insurance' is primary, excess or contingent"); *Great Am. Ins. Co.*, 492 F. Supp.2d at 713 ("Kentucky courts will enforce an 'escape' clause that clearly contemplated the circumstances at hand."); *see also* KY. MOTOR VEHICLE INS. LAW § 12:4 (2012-2013 ed.) ("when one policy's escape clause is pitted against another policy's excess clause . . . the escape clause will prevail . . . . [so long as it] specifically mention[s] that it denies coverage in the event that other coverage, *primary or excess*, is available.").

Kentucky courts have clearly held that a non-standard escape clause prevails over an excess clause. *Empire Fire and Marine Ins. Co.*, 927 S.W.2d at 845 ("Where two insurance companies are contesting primary liability, and one policy contains a non-standard escape clause while the other contains an excess clause, the escape clause prevails over the excess clause.") (citing *Gov't Emp. Ins. Co.*, 415 S.W.2d at 582); *see also Great Am. Ins. Co.*, 492 F. Supp.2d at 713 (same).

In *Great American*, the escape clause in a legal malpractice policy read:

> PROVIDED ALWAYS THAT as to 1, 2, or 3 above, such act, error, omission, or such Personal Injury occurred:
> (a) during the Policy period, or
> (b) prior to the Policy Period, provided that prior to the effective date of this policy:

> (1) the Insured did not give notice to any other insurer of any such act, error, omission, or Personal Injury, and
> (2) the Insured had no basis to believe that the Insured had breached a professional duty or committed a Personal Injury, and
> (3) there is no other policy, or policies which provide insurance for such liability or Claim.

*Great Am. Ins. Co.*, 492 F. Supp.2d at 710.

The court held the escape clause was non-standard because "[i]t contemplated that other primary insurance might cover an act or omission prior to the policy period at issue," and "if a lawyer committed such an act or omission while an employee at another firm, that firm, if it still existed, would have the primary and prior interest in protecting itself from the consequences of those acts." *Id.* at 714. There is no such contemplation in the Great American provision at issue here, which simply states that the policy excludes: "Damages which are covered by other insurance in any other insurance policy whether collectible or not."

Great American argues however, that its provision is analogous to the one in *Great American* on the basis that subsection (g) of its policy excludes coverage for a claim that occurred prior to coverage of which another insurer had notice, and this subsection must be read in conjunction with subsection (h). This argument is without merit. Subsections (g) and (h) are in no way interdependent. Each can be read as a stand alone provision in the policy. That is completely unlike the non-standard escape provision in *Great American* where the conjunctive set of factors clearly contemplated a specific coverage issue, *e.g.*, that another insurer would be liable for a prior act or omission.

- 12 -

We agree with the district court that Great American's provision 2.h. is a standard escape clause. The clause does not specifically contemplate, as did the clauses in *Government Employees*, *Empire Fire and Marine*, and *Great American*, that coverage will be denied in the event that some other "primary or excess" insurance is available based on the occurrence of a specific risk. *Gov't Emp. Ins. Co.*, 415 S.W.2d at 582; *Empire Fire and Marine Ins. Co.*, 927 S.W.2d at 845; *Great Am. Ins. Co.*, 492 F. Supp.2d at 713. Accordingly, the provision is subject to the general rule that where a standard escape clause conflicts with an excess clause, the insurer with the standard escape clause is not relieved of its obligation to provide primary coverage. *Ohio Cas. Ins. Co.*, 511 S.W.2d at 674.

## C.

In an effort order to avoid this conclusion, Great American argues that *Ky. Farm Bureau Mut. Ins. Co. v. Shelter Mut. Ins. Co.*, 326 S.W.3d 803 (Ky. 2010) abrogated the distinction between standard and non-standard escape clauses and thus we should not apply such a distinction. But Great American reads this case far too broadly.

*Kentucky Farm Bureau* dealt with the issue of how courts should handle two competing excess clauses in car insurance policies. Prior to *Kentucky Farm Bureau*, the rule in Kentucky had been that where two such excess clauses were "mutually repugnant," *i.e.*, they only provided insurance in excess of the other's coverage and thus "one cannot rationally choose between them," the court would attempt to apportion liability between the insurers. *Id.* at 807. *Kentucky Farm Bureau* did away with this analysis by creating a rule that where a vehicle owner and non-owner

driver are both insured, and there are two "mutually repugnant" excess clauses, the vehicle owner's insurance shall be primary. *Id.* at 811.

The court based its decision on the difficulty courts had with making the mutually repugnant determination, the inevitable inequities in pro rata apportionment, and the "spirit" of the Kentucky motor vehicle code, which requires vehicle owners to purchase insurance and imposes liability on owners for injuries arising out of vehicle ownership. *Id.* at 811-12. In articulating this new rule, the court expressly overruled three of its prior cases to the extent those cases were "inconsistent herewith." *Id.* at 811. At least two of those cases are clearly inapplicable here. *See State Farm Mut. Auto. Ins. Co. v. Register*, 583 S.W.2d 705 (Ky. App. 1979) (dealing with two competing escape clauses); *Omni Ins. Co. v. Ky. Farm Bureau Mut. Ins. Co.*, 999 S.W.2d 724 (Ky. App. 1999) (not dealing with excess clauses or escape clauses at all, but dealing with a faulty car transfer).

The third, *Royal-Globe Ins. Companies v. Safeco Ins. Co. of Am.*, 560 S.W.2d 22 (Ky. App. 1977), involved an excess clause versus an escape clause, but the court does not appear to have overruled it for drawing a distinction between the two clauses. Rather, *Royal-Globe* was overruled to the extent that its holding was based on placing insurance policy language above the rights of injured third parties in the auto insurance context. *See Ky. Farm Bureau Mut. Ins. Co.*, 326 S.W.3d at 810-11 (quoting *Royal-Globe*, 560 S.W.2d at 24). The *Kentucky Farm Bureau* court pointed out that this reasoning was faulty because it did not comport with the requirements and "spirit" of the Kentucky Motor Vehicle Code. 326 S.W.3d at 811-12. It concluded: "Thus, under the mandates

of the MVRA, our trial courts, under similar circumstances, will no longer be mired in the quagmire of which policy is primary." *Id.* at 812.

There is nothing in the *Kentucky Farm Bureau* opinion suggesting, as Great American urges, that it abrogated the distinction between standard and non-standard escape clauses, or that a court in a non-motor-vehicle insurance case should not engage in determining which clause prevails between an escape clause and an excess clause. In fact, the court appears to affirmatively recognize such a distinction—and the primary case it is based on—in a footnote. *See Ky. Farm Bureau Mut. Ins. Co.*, 326 S.W.2d at 804 n.1 ("'In substance, [an excess clause] provide[s] that in the case of a loss . . . . the policy would be excess insurance over any other valid and collectible insurance.' Compare this with a standard escape clause, which 'in most instances . . . negat[es] any liability if other valid and collectible insurance is available to the driver.'") (quoting *Gov't Emp. Ins. Co.*, 415 S.W.2d at 581-82 (internal quotations omitted)). *See also*, KY. MOTOR VEHICLE INS. LAW § 12:4 (2012-2013 ed.) ("*Kentucky Farm Bureau v. Shelter* changes a fair amount of law, and answers many questions. It does not, however, necessarily change all the law where an excess clause in one policy is pitted against an escape clause in another policy . . . .").

It is not at all clear from the Kentucky Supreme Court's opinion that it abrogated the distinction between standard and non-standard escape clauses, or otherwise held that such distinctions should no longer be given effect in attempting to reconcile the language in two competing insurance policies. Accordingly, we cannot conclude, as Great American urges, that those distinctions should not be applied here.

**IV.**

For the foregoing reasons, we affirm the judgment of the district court granting summary

judgment in favor of American Casualty.