Patricia NANTZ, Appellant,

v.

**LEXINGTON LINCOLN MERCURY SUBARU; Universal Underwriters Insurance Company; Delbert Roberts, d/b/a Roberts Used Cars; and Liberty Mutual Insurance Company, Appellees.**

Jimmy D. SMITH and Daniel Smith, Appellants,

v.

**LEXINGTON LINCOLN MERCURY SUBARU; Universal Underwriters Insurance Company; Delbert Roberts, d/b/a Roberts Used Cars; and Liberty Mutual Insurance Company, Appellees.**

Nos. 95–SC–455–DG, 95–SC–449–DG.

Supreme Court of Kentucky.

June 19, 1997.

Asa P. Gullett, III, Teresa G. Combs Reed, Hazard, Edmond Collett, P.S.C., Kenneth A. Buckle, Hyden, for Patricia Nantz.

McKinnley Morgan, Hyden, for Jimmy D. Smith and Daniel Smith.

William A. Watson, P.S.C., Middlesboro, for Lexington Lincoln Mercury Subaru and Universal Underwriters Insurance Co.

Martha L. Brown, Farmer, Farmer, Kelley and Brown, London, for Delbert Roberts and Liberty Mutual Insurance Company.

William J. Kathman, Jr., E. Andre Busald, Busald, Funk, Zevely, P.S.C., Florence, for Amicus Curiae, Kentucky Academy of Trial Attorneys.

Dandridge F. Walton, David H. Vance, Day, Smith, Walton & Durham, Frankfort,

for Amicus Curiae, Kentucky Automobile Dealers Association.

## OPINION

STEPHENS, Chief Justice.

This appeal arises from a decision of the Court of Appeals which affirmed the Leslie Circuit Court's granting of a summary judgment in favor of the appellees herein. The central issue in the present case focuses on when title to a motor vehicle passes from a commercial car dealer to a buyer under Kentucky's titling and registration statutes, KRS 186A.010, *et seq.*, for the purpose of determining liability insurance coverage.

This case originated when Lexington Lincoln Mercury Subaru [hereinafter "Lexington"], a commercial dealer, sold an automobile to Delbert Roberts, also a commercial dealer. As part of the transaction, Lexington provided Roberts with the vehicle's title, a registration receipt and a vehicle transaction record [hereinafter "VTR"]. Roberts, who held the car less than 15 days, sold the car to Roger Simpson. Although Roberts provided Simpson with the appropriately endorsed certificate of title, a VTR, and a license receipt, Simpson failed to file these documents with the county court clerk's office. Nine months later, Simpson, who had never obtained insurance for the vehicle, was involved in a collision with a car owned by Daniel Smith, driven by Jimmy Smith, and occupied by Patricia Nantz. Consequently, the Smiths and Nantz filed separate lawsuits against Roberts and his insurer and Lexington and its insurer, claiming title to the car never passed to Simpson.

All defendants moved for summary judgment asserting that neither Roberts nor Lexington was the legal owner of the automobile. As previously mentioned, the Leslie Circuit Court granted summary judgment and plaintiffs appealed. Subsequently, the Court of Appeals affirmed the circuit court's judgment and this Court granted discretionary review.

Appellants urge this Court to find a duty on the part of a seller to require titling of a vehicle prior to relinquishing possession of it. Specifically, Appellants argue that the result reached by the courts below is in conflict with this Court's decision in *Potts v. Draper*, Ky., 864 S.W.2d 896 (1993). We disagree.

In determining the "owner" of a vehicle, KRS 186A.345 dictates that we utilize the definition of "owner" as set forth in KRS 186.010. KRS 186.010(7) defines an "owner" as "a person who holds the legal title of a vehicle." Moreover, two statutes, KRS 186A.215 and 186A.220, delineate the procedure to be followed when ownership to a motor vehicle is transferred. KRS 186A.215(1), the general requirements for transfer of vehicle ownership, provides that one may transfer title to a motor vehicle simply by completing the assignment and warranty of title portion of the certificate of title form and by filling in the federally-required odometer statement. Additionally, if "the owner's certificate of title fails to meet Kentucky's requirements for a lawful conveyance of title or . . . the owner's certificate of title fails to meet the requirements for the owner to execute an odometer disclosure statement . . . ," the transferor must further complete and deliver a VTR. KRS 186A.215(1). Furthermore, KRS 186A.215(2) provides:

> Except as otherwise provided in this chapter, the *transferee shall*, promptly after delivery to him of the vehicle, execute the application for a new certificate of title and registration by executing the applicable portions of a vehicle transaction record. If a vehicle transaction record is required by subsection (1) of this section, the *transferee shall* execute the applicable portions of the vehicle transaction record provided to him by his transferor. Any unexpired registration shall remain valid upon transfer of said vehicle to the transferee.

(emphasis added). Thus, according to KRS 186A.215, a transfer of title takes place when the seller completes and signs the assignment of title section of the title certificate and delivers it to the buyer.

KRS 186A.220 also addresses the requirements an automobile dealer must follow to achieve a proper transfer. In pertinent part it states:

(1) Except as otherwise provided in this chapter, when any *motor vehicle dealer* licensed in this state buys or accepts such a vehicle in trade, which has been previously registered or titled for use in this or another state, and which he holds for resale, he shall not be required to obtain a certificate of title for it, but shall within fifteen (15) days after acquiring such vehicle, notify the county clerk of the assignment of the motor vehicle to his dealership and pay the required transferor fee.

(2) Upon purchasing such a vehicle or accepting it in trade, the dealer shall obtain from his transferor, properly executed, all documents required by KRS 186A.215, to include the odometer disclosure statement thereon, together with a properly assigned certificate of title.

. . . .

(5) When he assigns the vehicle to a purchaser for use, he shall deliver the properly assigned certificate of title, and a properly executed vehicle transaction record, to such purchaser, who shall make application for registration and a certificate of title thereon.

Our decision in *Potts, supra,* appropriately followed the same requirements prescribed by the aforementioned language in KRS Chapter 186A. *Potts* concerned the sale of an automobile in which a commercial car dealer failed to transfer title to the buyer of a van at the time the buyer took possession of it because the dealer had not yet received the *certificate of title* from the previous owner. *Id.* at 898. When the dealer did file the VTR to effectuate transfer, an accident involving the van had already occurred. *Id.* Our decision in *Potts* determined that Kentucky's titling statutes are clear and unambiguous that "the *owner* of a motor vehicle is the title holder" in the absence of a valid conditional sale. *Id.* We further emphasized the public policy of this state, as expressed in KRS 304.39–010(1), to keep uninsured motorists off Kentucky's roads. *Id.* at 900.

Specifically, we stated in *Potts:*

[T]he real practical effect will merely be that licensed motor vehicle dealers will be required to obtain insurance coverage for motor vehicles they sell *until they transfer title by executing the appropriate legal documents* in the absence of a conditional sale . . . The purpose of the statute is to require the seller of a motor vehicle to take statutory steps to properly complete the sale and until this is done the seller will be considered the owner for the purposes of liability insurance. The result will be that all the public will be protected from uninsured motorists. That was the original intention of the statute and it must be supported.

864 S.W.2d at 899–900 (emphasis added). Ultimately, *Potts* correctly concluded that unless a conditional sale is involved, the dealer's insurance covers a vehicle "until" appropriate legal documents are given to the buyer. *Id.*

Similarly, in *Rogers v. Wheeler,* Ky., 864 S.W.2d 892, 895 (1993), we asserted:

Whether one pays cash for a vehicle or pays for the vehicle over time, be it one month or six months, the dealer must execute the necessary paperwork and *deliver it to the buyer to complete the transfer of title.*

(emphasis added). *See also Hartford Accident & Indem. Co. v. Maddix,* Ky.App., 842 S.W.2d 871 (1992).

The Court of Appeals also addressed this issue in *Cowles v. Rogers,* Ky.App., 762 S.W.2d 414 (1988). Applying KRS Chapter 186A to a conditional sales agreement between a dealer and a buyer, the court noted:

[T]he legislature by enacting KRS Chapter 186A, the automated motor vehicle registration titling system, intended to prevent the absolute sale of an automobile from becoming legally effective until such time as the seller executes and delivers a certificate of title for the vehicle to the buyer.

*Id.* at 415. In *Cowles,* the court determined that ownership for purposes of liability insurance had not passed based on KRS 186A.215(1) because a conditional sale was involved and no delivery of the documents of title had taken place. *Id.*

■ Essentially *Potts* and *Cowles* establish that when the proper legal documents

are transferred from the dealer to the buyer, the responsibility for insurance coverage on the part of the dealer ceases. Our main concern in *Potts* was that the dealer totally disregarded Kentucky's titling and registration statutes by giving the buyer the title papers to the vehicle *after* the transfer of vehicle possession. Thus, the buyer was totally foreclosed from filing the title documents at the county clerk's office. In contrast, the dealer in the present case gave the buyer the necessary title documents *before* transferring possession of the vehicle. Consequently, when Lexington sold the car to Roberts, it proffered all of the paperwork needed to transfer title to the vehicle. Likewise, Roberts presented all the statutorily required documents to Simpson when he purchased the vehicle. Thus, the Court of Appeals correctly held that title passed from Lexington to Roberts to Simpson, who ultimately held title to the vehicle on the date of the collision with the Smith vehicle.

To hold a commercial dealer responsible for a motorist who consciously chooses to disobey the law and drive his motor vehicle uninsured for nine months fails to reach the appropriate result in light of our established precedent. Unfortunately, this case demonstrates that it is possible for uninsured vehicles to be operated on the highways of this state for extended periods of time. While we agree that this is contrary to the public policy expressed in KRS 304.39–010(1) and KRS 190.033, for this Court to require dealers to honor the duties imposed on them within KRS 186A, as well as to further require them to take on the statutory responsibilities clearly left to the buyer, would not only circumvent the intent of our legislature, but would also amount to judicial activism which clearly falls outside this Court's constitutional authority.

Moreover, in 1994 Kentucky's General Assembly amended KRS 186A.220(5) to alleviate any ambiguity in the statute. Specifically, the new version of KRS 186A.220 adds the following language to subsection (5):

The dealer *may,* with the consent of the purchaser, deliver the assigned certificate of title, and the executed vehicle transac-

tion record of a new or used vehicle, directly to the county clerk. . . .

(emphasis added). Clearly, the legislature contemplated whether the commercial dealer should have a duty to require titling of the vehicle prior to relinquishing possession of it and has left such a determination to the vehicle dealer.

Finally, we note that originally this case was heard and decided along with *Mitchell v. Kentucky Farm Bureau Mut. Ins.,* Ky., 927 S.W.2d 343 (1996), which, unlike the present case, involved an installment sale of an automobile. Unfortunately, no petition for rehearing was filed in *Mitchell* and that case has already become a part of our jurisprudence. Consequently, we now overrule *Mitchell,* as the law we assert today regarding when title passes in the sale of a motor vehicle is controlling on all legal issues presented in that case.

For the following reasons, the decision of the Court of Appeals is affirmed.

COOPER, GRAVES and JOHNSTONE, JJ., concur.

GRAVES, J., files a separate concurring opinion.

COOPER and JOHNSTONE, JJ., join this concurring opinion.

STUMBO, J., dissents and files a separate dissenting opinion.

LAMBERT and WINTERSHEIMER, JJ., join this dissenting opinion.

GRAVES, Justice, concurring.

I join in the majority opinion and also file this concurring opinion. The majority opinion correctly interprets KRS 186A.010. Any other interpretation would insulate and protect irresponsible buyers who disobey the law by placing an undue and unfair burden on sellers who obey the law. The duty of properly registering the title of a motor vehicle is the obligation of the purchaser when the seller has provided all documents required by the transferring statute, KRS 186A.215. The responsible seller who complies with every requirement of the transferring statute should not be placed at the mercy of the

irresponsible buyer who fails to comply with the statute.

Also, the majority opinion precludes an adverse economic impact on all sellers of automobiles. For example, if a vehicle is sold, paid for, and delivered after the county offices are closed on a Friday, the title transfer cannot take place until the following Monday because the government offices are closed and the state computers are down for the weekend. Therefore, the buyer is operating the vehicle, still insured by the seller, for several days. This creates a myriad of unforeseeable risks from which a prudent seller can only be completely protected by selling vehicles exclusively while the appropriate government offices are open. This *would certainly place Kentucky automobile sellers at a competitive disadvantage with sellers in bordering states who do not have comparable burdens.*

While it would achieve a good and wholesome result to provide insurance coverage for injured innocent third parties when an automobile purchaser has failed to · procure insurance, providing this coverage at the expense of the seller merely because the buyer has not obeyed the law would reward irresponsibility. It is the prerogative of the legislature to write a statute achieving the result desired by the minority.

COOPER and JOHNSTONE, JJ., join in this concurring opinion.

STUMBO, Justice, dissenting.

The issue involves the question of when title to a motor vehicle passes from seller to buyer for the purposes of liability insurance coverage. The transaction was from a dealer to an individual. The Nantz and Smith cases arose from the same automobile accident.

Lexington Lincoln–Mercury–Subaru sold a 1982 Chevrolet to Delbert Roberts, d/b/a Roberts Used Cars, and provided Roberts with the title, a registration receipt, and a vehicle transaction record (VTR). Roberts, a licensed dealer who was not required to obtain a certificate of title because he held the car less than 15 days, as provided by KRS 186A.220(1), sold the car to Roger Simpson. Although Roberts provided Simpson with the

appropriately endorsed certificate of title, a VTR, and a license receipt, Simpson did not file these documents with the county clerk. Nine months later, Simpson, who had never obtained insurance for the vehicle, was involved in a collision with a car owned by Daniel Smith, driven by Jimmy Smith, and occupied by Patricia Nantz. The Smiths and Nantz filed separate lawsuits against Roberts and his insurer and Lexington Lincoln–Mercury–Subaru and its insurer, claiming title never passed to Simpson. The circuit court granted a summary judgment in favor of the defendants. The Court of Appeals determined that the uninsured Simpson was the owner. This Court granted discretionary review.

Jimmy and Daniel Smith argue that the result reached by the Court of Appeals permits an uninsured buyer to defeat the public policy of the Commonwealth of Kentucky by merely failing or refusing to have the title transferred. The Smiths urge this Court to find a duty on the part of the seller to require titling of the vehicle prior to relinquishing possession of the automobile.

As noted by the majority, Nantz contends that the result in this case is in conflict with this Court's decision in *Potts v. Draper,* Ky., 864 S.W.2d 896 (1993).

The public policy, as established by the legislature and expressed in *Potts, supra,* was to keep uninsured drivers off the highways of Kentucky. *Potts* stated that the statutes of Kentucky are clear and unambiguous that the owner of a motor vehicle is the titleholder in the absence of a valid conditional sale. *Id.* at 898.

In *Potts,* the dealer failed to transfer title to the van even after the transfer of possession of the vehicle, presumably in order to facilitate a future repossession in the event of a default in the payments. The dealer filed the VTR to effect transfer one week after the accident. *Id.* In Nantz and Smith, the dealer gave the necessary documents to the buyer, but took no steps to see that the buyer actually presented the paperwork to the county clerk. Consequently, the uninsured buyer was able to operate the vehicle on the

highways of Kentucky for nine months before the accident occurred.

This Court recognizes that the legislature amended some of the pertinent statutes in 1994 in an attempt to alleviate some of the problems raised. However, the amendments do not resolve the question of a purchaser who ignores the requirement of the statute and fails to take the transfer documents to the county clerk so as to change the certificate of title in the automated system of the Commonwealth. The pre–1994 definition of owner applies in this case, and that definition states that in the absence of a conditional sale or lease, the "owner" is the person "who holds legal title to the vehicle."

In *Potts,* this Court stated emphatically that the adoption of KRS 186A, in conjunction with the existing provisions of Chapter 186, had the effect of changing the law of Kentucky from an equitable title state to a certificate of title state for the purposes of determining ownership of the motor vehicle for liability insurance requirements. *Id.* at 900. Therefore, in the instant case, Simpson, who had only possession of the automobile, was not the owner of the vehicle because legal title had not been properly transferred to him. In accordance with the decision in *Potts,* I would hold that either Lexington Lincoln–Mercury–Subaru, or Delbert Roberts, d/b/a Roberts Used Cars, was the owner of the vehicle for liability insurance purposes.

We noted in *Mitchell v. Kentucky Farm Bureau Mut. Ins. Co.,* Ky., 927 S.W.2d 343 (1996), that the public policy of Kentucky has been expressed by the legislature and confirmed by this Court to the effect that all vehicles on the public roadways must be covered by liability insurance. *See also* KRS 304.39–010; *Potts, supra; Beacon Ins. Co. of America v. State Farm Mut. Ins. Co.,* Ky., 795 S.W.2d 62 (1990); *Rees v. United States Fidelity & Guar. Co.,* Ky.App., 715 S.W.2d 904 (1986).

Lexington Lincoln–Mercury–Subaru follows the Court of Appeals' rationale that any relief or explanation of this system must come from the Kentucky General Assembly. They rely on the fact that Roberts paid cash to Lexington Lincoln–Mercury–Subaru and received the title for the vehicle, an endorsed registration receipt, and a VTR, as well as accepted possession of the vehicle. Both Lexington Lincoln–Mercury–Subaru and Roberts are licensed automobile dealers in Kentucky. Lexington Lincoln–Mercury–Subaru had taken the vehicle in question more than fifteen days before selling it to Roberts. Lexington Lincoln–Mercury–Subaru maintains that once they sold the car to Roberts they had nothing to do with the vehicle thereafter. Roberts sold the used car at retail for cash to Simpson within two weeks after having acquired it from Lexington Lincoln–Mercury–Subaru. *Hartford Accident & Indem. Co. v. Maddix,* Ky.App., 842 S.W.2d 871 (1992), held that the transfer requirements in a dealer-to-dealer transaction did not require actual transfer of title to make the purchasing dealer responsible for liability insurance coverage on the vehicle. *Id.* at 872.

It would appear that KRS 186A.220 required, at the time of this transaction, that the purchaser for use shall take the documents to the courthouse and title the vehicle in his name. Even after the 1994 amendments to that statute, the duty remains with the purchaser unless he authorizes a dealer to do this, in which event the dealer withholds delivery of the vehicle until proof of insurance is produced. In the event the purchaser does not make the proper application and obtain the appropriate certificate, the risk of insurance liability falls to the last record owner in the automated system. Obviously, it behooves the seller to make sure that the proper changes of ownership have been made of record.

We next confront a problem arising out of KRS 186A.215(4) which in part says that "[i]f it comes to the attention of a transferor that a transferee did not promptly submit the necessary document within fifteen (15) calendar days to the county clerk as required by law in order to complete the transfer transaction. . . ." Once again, we should apply the same reasoning, that the documents of legal title have not been properly submitted and the risk of loss falls to the entity who has the last record title.

Indeed, the provision of KRS 186A.215(4) that "as required by law in order to complete the transfer transaction" has not been properly complied with. The delivery and transfer of documents of title and other indicia of ownership does not entirely satisfy the requirement of a certificate of title. The legislature has designed, and this Court has endorsed, the concept of a certificate of title. Nothing short of strict compliance with the law can be tolerated under the legislative system now in place. Kentucky is no longer an equitable title state. The reason for this change was to make sure that uninsured motorists do not drive any vehicles on the highways of the state.

This decision .frustrates the intent of the legislature and rejects the prior decisions of this Court through an overly technical interpretation of the holdings. We should not change course so soon after the holding in *Mitchell, supra.*

LAMBERT and WINTERSHEIMER, JJ., join this dissenting opinion.