**Randy KELLY and Sherry Kelly, Plaintiffs,**

v.

**Brenda McFARLAND et al., Defendants.**

**No. CIV.A. 99–435–HRW.**

United States District Court, E.D. Kentucky.

Sept. 28, 2001.

C.V. Reynolds, Neeley & Reynolds, Prestonburg, KY, for Plaintiffs.

Michael J. Cox, Miller, Griffin & Marks, Lexington, KY, for Metropolitan Property & Casualty Co.

J. Clarke Keller, Stites & Harbison, Lexington, KY, for John Deere Ins. Co.

## MEMORANDUM OPINION & ORDER

WILHOIT, Senior District Judge.

This matter is before the Court on cross motions for partial summary judgment [Record Nos. 68 & 70]. The matter has been fully briefed and is now ripe for review.

## I.  Introduction

This most interesting set of facts is undisputed by the parties.  On Saturday, August 21, 1999, the plaintiffs were at the Gambrel Toyota dealership in Corbin, Kentucky to purchase a 1990 Toyota Corolla for their daughter, Rita. Since the "title clerk" was not at the dealership on Saturday, the Kellys dealt with Debbie Grubb, Gambrel's finance manager.  Immediately before taking physical possession of the car, Randy Kelly signed an Application for Title/Registration and Rita signed the "First Re–Assignment by Dealer" portion of the vehicle's Certificate of Title.  Although the dealer's portion of the documents are dated August 21, 1999, the testimony of Ms. Grubb is that the dealer's designated title clerk was not at the lot on Saturday and could not have signed the documents at any time prior to August 23, 1999.  The documents are also notarized by the title clerk.  The defendants do not dispute that the title clerk actually signed the documents on Monday, August 23, 1999.  The completed title and registration paperwork were retained by Gambrel until the paperwork giving Gambrel title from the car's previous owner arrived on August 25, 1999.  The completed paperwork was then submitted on either Friday, August 27th or Monday, August, 30th.  The Whitley County Clerk issued title to Randy and Rita Kelly on August 30, 1999.

On the way home from the Corbin dealership on August 21st, the plaintiffs were injured in a motor vehicle accident when a car driven by Belinda McFarland, and owned by Rick McFarland, collided with the newly delivered Corolla in Rockcastle County, Kentucky.  As a result of the accident, Randy and Sherry Kelly filed this action against Belinda McFarland, Rick McFarland, and Metropolitan Property and Casualty Insurance Company, the plaintiff's insurance carrier.  Metropolitan

was named because it is alleged that the McFarlands either lacked insurance or had policies which were insufficient to compensate the plaintiffs for their injuries. The plaintiffs, therefore, would have a potential uninsured/underinsured claim against Metropolitan.

The plaintiffs amended their complaint to join John Deere Insurance Company as an additional defendant in a second uninsured/underinsured benefits claim. John Deere is the principal insurance carrier for Gambrel Toyota. Metropolitan immediately filed a cross-claim asserting that John Deere was principally liable for any uninsured/underinsured claim.

## II. Standard of Review

Under Rule 56 of the Federal Rules of Civil Procedure the Court must view the evidence in the light most favorable to the nonmoving party. Thus, when examining the record the Court will resolve doubts and construe inferences in favor of the nonmoving party in an effort to determine if any genuine issues of material fact exist. However, in a series of decisions commonly referred to as the "trilogy", *Celotex Corp., v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), the U.S. Supreme Court emphasized that "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252, 106 S.Ct. 2505. In short, the "trilogy" requires the nonmoving party to produce specific factual evidence that a genuine issue of material fact exists.

The United States Court of Appeals for the Sixth Circuit has interpreted the "trilogy" to mean that the nonmoving party must produce enough evidence, after having had a reasonable opportunity to conduct discovery, so as to withstand a directed verdict motion. *See Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir.1989). As that Court stated, "the movant could challenge the opposing party to 'put up or shut up' on a critical issue...[and] if the respondent did not 'put up', summary judgment [is] proper." *Id.* at 1478.

## III. Discussion

■ This appears to be a case of first impression in the Commonwealth. A federal court sitting in a diversity action must apply the substantive law of the state in which it sits. *See Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). In this case, unfortunately, no Kentucky court has comprehensively addressed the precise issue asserted here. It is this Court's duty, therefore, to decide unsettled issues of state law as a Kentucky court would decide them. *See Overstreet v. Norden Laboratories, Inc.*, 669 F.2d 1286, 1290 (6th Cir.1982). To do so, the Court must predict how our state courts would rule.

The sole issue before the Court is who had primary uninsured/underinsured motorist insurance coverage at the instance of the August 21, 1999 motor vehicle accident. It is undisputed that Kentucky is a certificate of title state. *See Potts v. Draper*, 864 S.W.2d 896, 900 (Ky.1993) (noting the change from an equitable title state to certificate of title state). John Deere argues that it should be granted summary judgment due to the 1994 amendments to the motor vehicle titling statutes which allow dealers to retain the paperwork for delivery to the county clerk's office rather than to simply provide it to purchasers. The Court is familiar with these statutes.

Under K.R.S. § 186.010(7)(c), a licensed motor vehicle dealer no longer "owns" a car when he: 1) transfers physical possession of a motor vehicle to a purchaser pursuant to a bona fide sale; and 2) complies with the requirements of K.R.S. § 186A.220. There is not a dispute among the parties that Gambrel Toyota is a licensed motor vehicle dealer and that the 1990 Corolla was "delivered" to the plaintiffs pursuant to a bona fide sale. The Court directs its attention, then, to the requirements of K.R.S. § 186A.220. That statute states in relevant part:

When he assigns the vehicle to a purchaser for use, he shall deliver the properly assigned certificate of title, and other documents if appropriate, to such purchaser, who shall make application for registration and a certificate of title thereon. The dealer may, with the consent of the purchaser, deliver the assigned certificate of title, and other appropriate documents of a new or used vehicle, directly to the county clerk, and on behalf of the purchaser, make application for registration and a certificate of title. In so doing, the dealer shall require from the purchaser proof of insurance as mandated by K.R.S. § 304.39–080 before delivering possession of the vehicle. Notwithstanding the provisions of K.R.S. §§ 186.020, 186A.065, 186A.095, 186A.215, and 186A.300, if a dealer elects to deliver the title documents to the county clerk and has not received a clear certificate of title from a prior owner, the dealer shall retain the documents in his possession until the certificate of title is obtained.

KY.REV.STAT.ANN. § 186A.220(5).

■ The purpose of this statute is to promote the efficient and smooth transfer of titles of motor vehicles bought and sold throughout the Commonwealth. The statute makes it abundantly clear that the dealer may retain the *assigned* certificate of title and other documents, in order to promptly deliver them to the county clerk. What distinguishes this case from the procedure set forth in the statute, however, is that at the moment of the accident on August 21, 1999, Gambrel Toyota retained only an *assignable* title-not an assigned certificate. The plaintiffs had completed the portion of the paperwork reserved to them and no doubt left the lot as the equitable owners of the 1990 Corolla, but the facts are clear to the Court that legal title had not yet been transferred.

The Court notes that the statute requires a dealer who elects to not retain the paperwork to also deliver an *assigned* certificate of title to the bona fide purchaser. *See* KY.REV.STAT.ANN. § 186A.220. John Deere does not allege, and cannot support, an argument that title to the Corolla would have transferred if Ms. Grubb had allowed the plaintiffs to simply take home a certificate of title that was unsigned by the dealer's title clerk on August 21st.

■ John Deere also argues that the statute does not require the dealer, who elects to retain the certificate of title, to execute the documents at the time of the sale. The Court agrees, but is uncertain as to the significance of that point. Since execution of the assignment is the touchstone of title transfer, and since liability remains on the dealer until transfer it accomplished, it almost goes without saying that the dealer would want to execute the documents on the day of sale to avoid this precise situation.

In so holding, the Court is not saying that the assigned certificate of title and other documents must be delivered to the county clerk in order to effectuate the transfer of title. Instead, the Court is simply holding that the title retained by the dealer must be assigned, and hence fully executed, as prerequisite to effectuating the transfer of title. In other words,

the dealer's duty to complete and sign the certificate of title assignment is paramount to his duty to actually deliver the completed paperwork to the county clerk's office. The former duty cuts to the very heart of the contract, whereas the latter duty is akin to a mere ministerial function.

This result is analogous to and consistent with the situation when two individuals attempt to transfer title to a car pursuant to K.R.S. 186A.215. Kentucky case law makes it clear that in such a situation, the execution of the documents necessary to transfer title is a statutory obligation which must be fulfilled in order to cause a change in legal ownership. *See Nantz v. Lexington Lincoln Mercury Subaru*, 947 S.W.2d 36, 37 (Ky.1997); *Omni Insurance Company v. Kentucky Farm Bureau Mutual Insurance Company*, 999 S.W.2d 724, 727 (Ky.App.1999).

Finally, the Court is convinced that this holding is supported by the public policy interests which were important to the General Assembly in enacting these statutes. A statute which clearly denotes the moment of transfer of title is crucial to adjudicating claims such as this where the precise sequence of events is critical to resolving the claim. While the General Assembly no doubt encourages licensed motor vehicle dealers to sell and purchase cars on weekends, prudence dictates that the dealer should provide agents and employees with the authority to complete the transactional paperwork necessary to effectuate a transfer of title on the day of delivery of the vehicle. As this case demonstrates, failure to do so can result in serious and dire consequences.

The facts of this case make it clear that by failing to execute the assignment of title, Gambrel Toyota failed to comply with the requirements of K.R.S. § 186A,220 until August 23, 1999 at the earliest. The safe harbor provision of K.R.S. § 186.010(7)(c) is therefore not to be invoked by the John Deere Insurance Company. At the moment of the incident involving the plaintiffs and Belinda McFarland, Gambrel Toyota was still the legal owner of the 1990 Corolla. Accordingly, John Deere would bear principal responsibility for any uninsured/underinsured motorist claims that stem from the August 21, 1999 motor vehicle accident.

### IV. Conclusion

Accordingly, **IT IS HEREBY ORDERED**:

1. that the defendant's motion for partial summary judgment [Record No. 68] is **DENIED**;

2. that the plaintiff's motion for partial summary judgment [Record No. 70] is **GRANTED** as set forth herein; and

3. that this Order is interlocutory in all respects.