**AUTO ACCEPTANCE CORPORATION, d/b/a J.D. Byrider, Inc.; and Auto–Owners Insurance Company, Appellants,**

v.

**T.I.G. INSURANCE COMPANY; Sharon Peege; and Wayne Chandler, Appellees.**

**No. 2000–SC–0822–DG.**

Supreme Court of Kentucky.

Nov. 21, 2002.

Guy Colson, Michael E. Liska, Fowler, Measle & Bell, Lexington, Counsel for Appellant, Auto Acceptance Corporation, D/B/A J.D. Byrider, Inc.

Thomas L. Travis, Clark, Ward & Cave, Lexington, Counsel for Appellant, Auto–Owners Insurance Company.

William D. Kirkland, Julie Cobble, J. Bradford Derifield, McBrayer, McGinnis, Leslie & Kirkland, Frankfort, Counsel for Appellee, T.I.G. Insurance Company.

Alan M. Hall, Manty, Hall & Associates, Elizabethtown, Counsel for Appellee, Sharon Peege.

Stephen R. Chappell, Landrum & Shouse, Lexington, Counsel for Appellee, Wayne Chandler.

JOHNSTONE, Justice.

At issue in this case is the identity, for insurance purposes, of the owner of a vehicle involved in an accident. Relying primarily on *Nantz v. Lexington Lincoln Mercury Subaru*, Ky., 947 S.W.2d 36 (1997), both the trial court and the Court of Appeals determined that the "owner" was the seller of the car, Appellant, J.D. Byrider, Inc. Because of an intervening revision to KRS 186A.220, we disagree and

hold that the owner was the purchaser, Appellee, Wayne Chandler.

### Facts and Procedural History

On January 21, 1997, Chandler and J.D. Byrider executed both a retail sales contract for the purchase of an Acura Integra automobile and a Kentucky application for title and registration for the Acura. Concurrent with these events, Chandler presented J.D. Byrider with proof of insurance for another vehicle. This insurance policy was maintained with Appellee, the T.I.G. Insurance Company. The insurance policy allowed Chandler to add a vehicle to his T.I.G. coverage within thirty (30) days of becoming the vehicle's owner. J.D. Byrider then gave Chandler actual possession of the Acura. But J.D. Byrider had yet to receive a certificate of title from the previous owner of the vehicle. J.D. Byrider received the title to the Acura on January 30, 1997, and, on February 4, 1997, J.D. Byrider presented the documents necessary to transfer title to Chandler to the Hardin County Clerk.

On January 22, 1997—one day after purchasing the vehicle—Chandler was involved in a collision with a vehicle driven by Appellee, Sharon Peege. Some time after Chandler reported the loss to T.I.G., T.I.G. filed a petition for a declaration of rights in the Hardin Circuit Court. In the petition, T.I.G. argued that it had no liability to Peege because Chandler failed to add the Acura to his policy within thirty days as required by Chandler's policy. In the alternative, T.I.G. argued that it had no liability because J.D. Byrider, not Chandler, was the owner of the vehicle for insurance purposes. Both T.I.G. and J.D. Byrider filed motions for summary judgment.

The trial court granted summary judgment to J.D. Byrider on December 10, 1998. In so doing, the trial court found that Chandler was the owner of the vehicle for insurance purposes. But the trial court subsequently reversed itself in response to T.I.G.'s motion to vacate or set aside the December 10 order. The trial court specifically found that J.D. Byrider was the owner of the vehicle for insurance purposes at the time of the accident. The trial court vacated the summary judgment entered in favor of J.D. Byrider and entered summary judgment in favor of T.I.G.

J.D. Byrider appealed and the Court of Appeals affirmed the trial court's order granting T.I.G. summary judgment on June 30, 2000. We granted discretionary review on July 15, 2001, and heard oral arguments on February 14, 2002. After careful consideration of the briefs and the arguments presented, we reverse the Court of Appeals.

### Discussion

■ At issue in *Nantz v. Lexington Lincoln Mercury Subaru* was "when title to a motor vehicle passes from a commercial car dealer to a buyer under Kentucky's titling and registration statutes ... for the purpose of determining liability insurance coverage." Ky., 947 S.W.2d 36, 37 (1997). In *Nantz*, the car dealer sold an automobile to one Roger Simpson. *Id.* Concurrent with the sale, the car dealer supplied Simpson with all the necessary documents, including the title, to transfer the vehicle's title into his name. *Id.* Simpson failed to file the documents with the county clerk's office, failed to obtain insurance for the vehicle, and was involved in an accident some nine months after the sale of the vehicle. *Id.*

After reviewing the applicable titling statutes and relevant case law, the *Nantz* Court concluded that "when the proper legal documents are transferred from the dealer to the buyer, the responsibility for insurance coverage on the part of the deal-

er ceases." *Id.* at 38–39, *citing Potts v. Draper,* Ky., 864 S.W.2d 896 (1993) and *Cowles v. Rogers,* Ky.App., 762 S.W.2d 414 (1988). Additionally, *Nantz* states:

> Our decision in *Potts* determined that Kentucky's titling statutes are clear and unambiguous that "the owner of a motor vehicle is the title holder" in the absence of a valid conditional sale.... We further emphasized the public policy of this state, as expressed in KRS 304.39–010(1), to keep uninsured motorists off Kentucky's roads.

*Id.* at 38.

Both the trial court and the Court of Appeals correctly determined that, under *Nantz,* J.D. Byrider was the owner of the Acura for insurance purposes because it retained the title to the vehicle. But apparently both courts failed to take into account the revision made to KRS 186A.220 by the General Assembly in 1994.

The pre–1994 version of KRS 186A.220 applied in *Nantz. See id.* at 41 (Stumbo, J., dissenting). The 1994 revision changed KRS 186A.220(5) to read:

> When he assigns the vehicle to a purchaser for use, he shall deliver the properly assigned certificate of title, and a properly executed vehicle transaction record, to such purchaser, who shall make application for registration and a certificate of title thereon. *The dealer may, with the consent of the purchaser, deliver the assigned certificate of title, and the executed vehicle transaction record of a new or used vehicle, directly to the county clerk, and on behalf of the purchaser, make application for registration and a certificate of title. In so doing, the dealer shall require from the purchaser proof of insurance as mandated by KRS 304.39–080 before delivering possession of the vehicle. Notwithstand-*

*ing the provisions of KRS 186.020, 186A.065, 186A.095, 186A.215, and 186A.300, if a dealer elects to deliver the title documents to the county clerk and has not received a clear certificate of title from a prior owner, the dealer shall retain the documents in his possession until the certificate of title is obtained.*

(Emphasis added). (Section 5 has been subsequently revised since 1994, but none of the revisions affect the substance of the 1994 revision for the purposes of this case).

*Nantz* explains in dicta why the additional, above-emphasized language was added to Section 5:

> Clearly, the legislature contemplated whether the commercial dealer should have a duty to require titling of the vehicle prior to relinquishing possession of it and has left such a determination to the vehicle dealer.

*Nantz,* 947 S.W.2d at 39. We read the purpose of the revision correctly in *Nantz.*

The 1994 revision created an exception to the general statutory scheme that makes the title holder the owner of a vehicle for insurance purposes. But a car dealer can only take advantage of the exception by first verifying that the buyer has a valid and current insurance policy that covers the purchased vehicle. This exception is consistent with the important public policy of keeping uninsured vehicles off Kentucky highways, roads, and streets.

For the reasons stated above, we hold that Chandler was the owner of the vehicle for insurance purposes and, therefore, reverse the Court of Appeals. Further, we remand this case to the trial court with instructions to vacate its order granting T.I.G.'s motion to vacate or set aside the December 10 order and to reinstate the summary judgment in J.D. Byrider's favor.

LAMBERT, C.J.; COOPER, GRAVES, STUMBO and WINTERSHEIMER, JJ., concur.

KELLER, J., concurs by separate opinion.

KELLER, Justice, Concurring.

While I concur in the majority's ultimate conclusion that summary judgment for Appellee T.I.G. Insurance Company was improper and that this case must be reversed and remanded for the trial court to enter summary judgment for Appellants, the path I follow to that conclusion diverges substantially from the one taken by the majority. In my opinion, this Court "lost its way" almost a decade ago in *Potts v. Draper*[1] when it dismissed, with little explanation other than that the Court found it "unpersuasive," a sound argument that "K.R.S. Chapter 186A ... has little to do with determining ownership for insurance purposes"[2] and adopted the reasoning of *Cowles v. Rogers*,[3] in which the Court of Appeals held that "since the effective date of KRS 186A, the provisions of that statute

... govern the issue of who owns a motor vehicle for purposes of insurance coverage."[4] In my opinion, when this Court is asked to determine the "owner" of a motor vehicle *for insurance purposes* it should do so by applying the definition of "owner"[5] found in the Motor Vehicle Reparations Act subtitle of the *Insurance Code*[6]—an act adopted with a stated purpose of "requir[ing] owners ... of motor vehicles in the Commonwealth to procure insurance covering basic reparation benefits and legal liability arising out of ownership ... of such motor vehicles"[7]—rather than the one KRS Chapter 186A uses in connection with provisions establishing an automated motor vehicle registration system designed for entirely different purposes like logistical efficiency, the inhibition of trafficking in stolen vehicles, and easier collection of taxes and licensing fees.[8]

Thus, in the case at bar, I believe that the trial court should have granted summary judgment for Appellants because, at the time of the accident, J.D. Byrider, Inc.

1. Ky., 864 S.W.2d 896 (1993).

2. *Id.* at 899.

3. Ky.App., 762 S.W.2d 414 (1989).

4. *Id.* at 416–417. *See Potts v. Draper, supra* note 1 at 899.

5. KRS 304.39–020(12) ("'Owner' means a person, other than a lienholder or secured party, who *owns or has title to* a motor vehicle or is entitled to the use and possession of a motor vehicle subject to a security interest held by another person." (emphasis added)).

6. *See* KRS 304.39–010—304.39–340.

7. KRS 304.39–010(1).

8. *See* KRS 186A.010(1):

An automated motor vehicle and trailer registration and titling system shall be developed and implemented as expeditiously as practicable in all counties of the Commonwealth. The automated motor vehicle

and trailer registration system shall be designed to enable Kentucky's county clerks to produce motor vehicle and trailer certificates of registration in their offices, and certificates of title in Frankfort, by automated means utilizing telecommunication terminals and associated devices supplied by the Commonwealth, to inhibit registration and transfer of stolen motor vehicles or trailers, to improve the capability of detecting and recovering such vehicles, to ensure development of a common vehicle information database to improve efficiency in auditing motor vehicle usage tax, license fee collections, and in collecting personal property tax to provide information to the traffic record system, and to provide improved security interest protection to potential creditors throughout Kentucky while simultaneously reducing the number of forms that must be processed and stored each year in Kentucky.
*Id.*

neither owned the motor vehicle—it had, after all, sold the vehicle to Chandler the day before—nor possessed title to it, and thus, applying the KRS 304.39–020(12) definition, J.D. Byrider, Inc. was not the "owner" of the vehicle responsible for insuring it. Although I recognize that the majority's analysis tracks existing precedent, I believe that precedent to be inherently flawed, and I would overrule *Potts v. Draper* so that, in future cases, Kentucky courts may determine ownership for insurance purposes under statutory provisions germane to that inquiry.