RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2004 FED App. 0024P (6th Cir.)
File Name: 04a0024p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

MOTORISTS MUTUAL
INSURANCE COMPANY,
     *Plaintiff-Appellee,*

    *v.*

VAKISHA L. HAMMOND, as
Mother and Legal Guardian of
VANIQUA HAMMOND, a
minor,
    *Defendant-Appellant.*

No. 02-5577

Appeal from the United States District Court
for the Western District of Kentucky at Louisville.
No. 99-00803—Thomas B. Russell, District Judge.

Argued: December 12, 2003

Decided and Filed: January 15, 2004

Before: COLE and CLAY, Circuit Judges; QUIST, District
Judge.[*]

_____

### COUNSEL

**ARGUED:** Henry K. Jarrett III, JARRETT &
CAMPISANO, Louisville, Kentucky, for Appellant. Kenneth
Gates Doane, Jr., WARD, TYLER & SCOTT, New Albany,
Indiana, for Appellee. **ON BRIEF:** Henry K. Jarrett III,
JARRETT & CAMPISANO, Louisville, Kentucky, J.
Leonard Rosenberg, Louisville, Kentucky, for Appellant.
Kenneth Gates Doane, Jr., WARD, TYLER & SCOTT, New
Albany, Indiana, for Appellee.

_____

### OPINION

_____

CLAY, Circuit Judge. In this diversity action premised on
Kentucky law, Defendant Vakisha Hammond appeals the
November 26, 2001, order of the district court granting
summary judgment in favor of Plaintiff Motorists Mutual
Insurance Company ("Motorists Mutual"), declaring that she,
as mother and legal guardian of Vaniqua Hammond, is not
entitled to recover any amount from Motorists Mutual
pursuant to its automobile insurance policy for Albin Used
Cars, Inc ("Albin"). She also appeals the district court's April
5, 2002, denial of her motion for reconsideration of the
November 26, 2001, order. For the reasons that follow, this
Court finds that Albin owned the car that Vaniqua Hammond
was occupying at the time of the accident, and, therefore, she

_____

[*] The Honorable Gordon J. Quist, United States District Judge for the
Western District of Michigan, sitting by designation.

was an insured pursuant to the Motorists Mutual policy and was entitled to underinsured motorist benefits thereunder. Accordingly, this Court **REVERSES** the district court's grant of summary judgment and denial of reconsideration and **VACATES** the related declaratory judgment.

## I.

### A.  Procedural History

On September 16, 1998, a vehicle driven by Patricia Hastings struck a 1988 Mercury being operated by Vakisha Hammond. Hammond's daughter, Vaniqua Hammond, and another individual were passengers in the Mercury at the time of the accident. Vaniqua allegedly suffered "catastrophic injuries." Vaniqua Hammond eventually settled with Ms. Hastings' insurer for $50,000, representing Hastings' policy limit. Vakisha Hammond had purchased the Mercury from Albin, which is insured by Motorists Mutual. Albin had purchased the Mercury at auction from Swope Auto Center, which is insured by Motorists Insurance Company. Because Vakisha Hammond had no automobile insurance at the time, she, on behalf of her daughter, sought underinsured motorist benefits from Motorists Mutual and Motorist Insurance Company. Vaniqua Hammond eventually settled her claim against Motorist Insurance Company (Swope's insurer).

On December 17, 1999, Motorists Mutual (Albin's insurer), an Ohio corporation, filed a complaint for declaratory judgment in the district court against the Hammonds, residents of Kentucky. The Hammonds' suit against Motorists Mutual, filed in state court, subsequently was removed to federal court and consolidated with the district court action where jurisdiction was premised on diversity of citizenship. After reviewing the parties' cross-motions for summary judgment, on November 26, 2001, the district court entered a declaratory judgment, declaring that Vakisha Hammond, as mother and legal guardian of Vaniqua

Hammond, would not recover any amount from Motorists Mutual under its insurance policy with Albin. In response to the Hammonds' motion for reconsideration, on April 5, 2002, the district court reaffirmed its previous grant of summary judgment. Vakisha Hammond, on behalf of Vaniqua Hammond, noticed her appeal on April 25, 2002.

### B.  Substantive Facts

The following undisputed facts are taken from the district court's memorandum opinion and order of November 26, 2001, as well as from the parties' joint stipulation of the facts. For ease of reference, they are set out in bullet-point format:

• On August 12, 1998, Zina Merkin traded in her car, a Mercury, to Swope Auto Center ("Swope"). Merkin executed a request for a duplicate title, a power of attorney to Swope and an odometer statement. Swope prepared a *Notice to County Clerk of Vehicle Acquisition* form, but did not file it with the County Clerk.

• On August 18, 1998, Swope auctioned the Mercury, and Albin obtained possession.

• On August 26, 1998, Swope requested a duplicate title on the Mercury, which Swope received prior to September 3, 1998.

• On August 27, 1998, Albin still had no title documents from Swope, but nevertheless sold the Mercury to Vakisha Hammond, who took possession of the car. At the time, Hammond executed an odometer disclosure statement and a retail installment contract, financing the purchase price of the vehicle through Albin. Hammond also executed a Kentucky Automobile Dealer Association Form 13, granting Albin permission to deliver the necessary title work to the County Clerk on her behalf.

• By September 3, 1998, Swope had all the documents necessary to convey the Mercury to Albin, but did not record these documents nor deliver them to Albin.

• On September 16, 1998, Hammond was driving the Mercury in which her daughter, Vaniqua Hammond, was a passenger, when the car was struck by a vehicle driven by Patricia Hastings. Vaniqua Hammond allegedly suffered "catastrophic injuries" in the accident.

• On September 17, 1998, Albin paid Swope for the Mercury.

• On September 18, 1998, Swope recorded with the County Clerk the August 12, 1998, documents from Merkin, as well as a *Notice to County Clerk of Vehicle Acquisition* form reflecting Albin's acquisition of the Mercury from Swope.

• On October 7, 1998, the Commonwealth of Kentucky issued title on the Mercury to Hammond.

• On December 7, 1999, Vaniqua Hammond obtained a $50,000 settlement from Ms. Hasting's insurer, which was Hastings' policy limit.

• Vakisha Hammond had no automobile insurance, and therefore Vaniqua Hammond sought underinsured motorists benefits from Motorists Mutual, which insures Albin. Vaniqua Hammond also sought underinsured motorists benefits from Motorists Insurance Company, which insures Swope. Vaniqua Hammond settled her claim against Motorists Insurance Company in May 2001.

## II.

We review a district court's grant of summary judgment *de novo. Herman v. Fabri-Centers of Am., Inc.,* 308 F.3d 580,

585 (6th Cir.2002). We also review a district court's interpretation of an insurance contract *de novo. Vencor, Inc. v. Standard Life & Accident Ins. Co.,* 317 F.3d 629, 634 (6th Cir.2003) (citing *BP Chemicals, Inc. v. First State Ins. Co.,* 226 F.3d 420, 424 (6th Cir.2000)).

## III.

The central issue in this case is whether Vaniqua Hammond, Vakisha Hammond's daughter, is entitled to receive underinsured motorist ("UIM") benefits pursuant to Albin's "garage coverage" automobile insurance policy with Motorists Mutual. According to the policy, UIM coverage applies to "covered autos," meaning cars that Albin "own[s]." (J.A. 147, 151). The policy defines an insured to include "[a]nyone … occupying a covered 'auto' …." (J.A. 198.) "Occupying" means "in, upon, getting in, on, out or off." (J.A. 199.) There is no dispute that Vaniqua Hammond was in the Mercury at the time of the accident. Thus, if the Mercury is a "covered auto" – that is, if Albin owned the Mercury at the time of the Hammonds' accident, then UIM benefits would be payable to Vaniqua Hammond as an "insured" because she would have been occupying a covered auto at the time she was injured.

Albin's garage coverage policy does not define "ownership" of an auto. Therefore, the Court must resort to the definition of "ownership" under Kentucky law. At the outset, it is important to note that the general law of sales does not apply when determining ownership of a motor vehicle for liability insurance purposes. *Potts v. Draper,* 864 S.W.2d 896, 898 (Ky. 1993). Instead, the Court must look to Kentucky statutory law on title ownership. *Id.* (noting that the Kentucky legislature had changed "the law of Kentucky from an equitable title state to a certificate title state"). In determining the "owner" of a vehicle, Ky. Rev. Stat. Ann. § 186A.345 (Banks-Baldwin 2002) dictates that the Court utilize the definition of "owner" as set forth in Ky. Rev. Stat.

Ann. § 186.010(7). *Nantz v. Lexington Lincoln Mercury Subaru,* 947 S.W.2d 36, 37 (Ky. 1997). These are the statutory provisions that set out the procedures for transferring vehicle ownership and, in turn, determine when an automobile sale has been completed for the purpose of insurance coverage. *Potts,* 864 S.W.2d at 900. Section 186.010(7) defines "owner" as either (1) a person who holds legal title to a vehicle or (2) a person who pursuant to a bona fide sale has received physical possession of the vehicle subject to any applicable security interest. Ky. Rev. Stat. Ann. § 186.010(7).

**A.    Albin held legal title to the Mercury**

Swope did not transfer title to the Mercury to Albin until September 17 or 18, 1998, a day or two after the accident. *See Nantz,* 947 S.W.2d at 37 ("[A]ccording to [Ky. Stat. Ann. §] 186A.215, a transfer of title takes place when the seller completes and signs the assignment of title section of the title certificate and delivers it to the buyer."). Nevertheless, the Kentucky Supreme Court's recent decision in *Auto Acceptance Corp. v. T.I.G. Ins. Co.,* 89 S.W.3d 398 (Ky. 2002), convinces this Court that Albin was an owner at the time of the accident under the first statutory definition of "owner."

In *Auto Acceptance,* an individual, Wayne Chandler, purchased an Acura Integra from a dealer, J.D. Byrider, Inc. *Id.* at 400. At the time of the purchase, Chandler presented J.D. Byrider with proof of insurance for another vehicle; Chandler's insurance policy allowed him to add a vehicle to his coverage within 30 days of becoming the vehicle's owner. *Id.* J.D. Byrider then gave Chandler actual possession of the Acura, even though it had not yet received a certificate of title from the previous owner of the vehicle. *Id.* J.D. Byrider received the title to the Acura eight days after Chandler was involved in an accident with the car. *Id.* Under the court's previous holding in *Nantz, supra,* it appeared to follow that

J.D. Byrider was not an owner because it had not been assigned title and received it by the date of Chandler's accident. *See Nantz,* 947 S.W.2d at 37 ("[A]ccording to KRS 186A.215, a transfer of title takes place when the seller completes and signs the assignment of title section of the title certificate and delivers it to the buyer."); *see also Kelly v. McFarland,* 243 F. Supp. 2d 715, 718-19 (E.D.Ky. 2001) (holding that "the title retained by the dealer must be assigned, and hence fully executed, as prerequisite to effectuating the transfer of title"). Yet the court in *Auto Acceptance* held:

> Both the trial court and the Court of Appeals correctly determined that, under *Nantz,* J.D. Byrider was the owner of the Acura for insurance purposes because it retained the title to the vehicle.

*Auto Acceptance,* 89 S.W.3d at 401. Since the court previously had acknowledged that J.D. Byrider did not physically have title at the time of the accident, the only logical interpretation of the court's holding is that  J.D. Byrider was the constructive title-holder of the Acura on the day of the accident.[1]

After holding that J.D. Byrider was the titleholder of the car it had delivered to the purchaser, the court in *Auto Acceptance* went on to hold that J.D. Byrider did not own the Acura for liability insurance purposes because of Ky. Stat. Ann.

---

[1]The concept of a dealer holding constructive title to a vehicle is incorporated into the very fabric of the titling statutes. *See* Ky. Stat. Ann. § 186A.220(1) (providing that a motor vehicle dealer is not required to obtain a certificate of title for a car that it buys or accepts in trade, as long as it notifies the county clerk of the acquisition within 15 days); *see also Hartford Accident & Indem. Co. v. Maddix,* 842 S.W.2d 871, 872 (Ky. Ct. App. 1992) (noting that "a dealer can become the owner of an automobile *without* actually acquiring title to the automobile") (emphasis in original; citing Ky. Stat. Ann. § 186A.220.).

§ 186A.220(5), which sets forth "an exception to the general statutory scheme that makes the title holder the owner of a vehicle for insurance purposes." *Id.* at 401; *see also* Ky. Stat. Ann. § 186A.220(5) (providing that dealer shall deliver certification of title to purchaser at time of vehicle's delivery; alternatively, the dealer may deliver the vehicle to the purchaser without title, as long as the purchaser consents to have the dealer apply for a registration and title on the purchaser's behalf: "In so doing, the dealer shall require from the purchaser proof of insurance … before delivering possession of the vehicle"). Under this exception, J.D. Byrider was not the owner because it had obtained proof of insurance from Chandler and had promised to apply for a registration and title on Chandler's behalf before delivering the Acura to him. *Auto Acceptance,* 89 S.W.3d at 401.

The facts herein are identical to the facts in *Auto Acceptance* with one crucial distinction – the dealer at issue in the instant case (Albin) cannot take advantage of the exception to the title-holder-as-owner rule. As in *Auto Acceptance,* there were two prior owners of the vehicle at issue in this case (Swope and Albin) and an individual purchaser (Hammond). As in *Auto Acceptance,* the dealer herein (Albin) from whom the individual purchaser (Hammond) received the vehicle had not yet received the title from the initial owner (Swope). Accordingly, under *Auto Acceptance*, it follows that Albin was the constructive title owner of the Mercury at the time of the accident, unless Albin can invoke the exception set forth in Ky. Stat. Ann. § 186A.220(5). It cannot.

Like the dealer in *Auto Acceptance,* Albin did not assign title to Hammond at the time it delivered the Mercury to her, and instead sought Hammond's consent to deliver the title documents to the county clerk on her behalf, thereby triggering the requirement that Albin withhold delivery of the Mercury to Hammond until she provided Albin with proof of insurance. *Id.* § 186A.220(5). It is undisputed that Albin

failed to obtain proof of insurance, as that term is defined by Kentucky regulations. *See* 806 Ky. Admin. Regs. 39:070 (2002) (listing five different methods of proving motor vehicle insurance). Had Albin complied with § 186A.220(5) (as well as with the requirement in § 186A.220(1) that Albin notify the county clerk of Hammond's purchase within 15 days), Albin would have not have been the Mercury's owner upon delivering it to Hammond. *See* Ky. Stat. Ann. § 186.010(7)(c) (providing that a dealer who delivers a car to a purchaser pursuant to a bona fide sale "and complies with the requirements of KRS 186A.220, shall not be deemed the owner of that vehicle solely due to an assignment to his dealership or a certificate of title in the dealership's name"). Since Albin did not comply with these requirements, it remained a constructive title-holder of the Mercury.

Treating a licensed dealer like Albin that holds itself out as the true owner of the vehicle with power to convey clear title as a constructive title-holder and charging it with the duty to obtain proof of insurance before delivering an automobile to the purchaser furthers one of the central purposes of Kentucky's titling statute, that of preventing uninsured drivers from taking to the roads. *See Auto Acceptance*, 89 S.W.3d at 401 (noting that Kentucky's registration and titling scheme is designed to fulfill "the important public policy of keeping uninsured vehicles off Kentucky highways, roads, and streets"). This approach also is consistent with the Kentucky Supreme Court's announcement that the titling statutes require dealers "to obtain insurance coverage for motor vehicles they sell until they transfer title by executing the appropriate legal documents" and that until the seller has taken the statutory steps to properly complete the sale it will be considered the owner for purposes of liability insurance. *Potts,* 864 S.W.2d at 900. Because Albin owned the Mercury at the time of the Hammonds' accident, Vaniqua Hammond was a covered "insured" under the Motorists Mutual underinsured motorists policy.

## B. The Hammonds were permissive users of Albin's Mercury

Albin also was an "owner" of the Mercury at the time of the Hammonds' accident pursuant to the second definition under Ky. Rev. Stat. Ann. § 186.010(7)(a) – "a person who pursuant to a bona fide sale has received physical possession of the vehicle subject to any applicable security interest." Albin was a bona fide purchaser of the Mercury from Swope. Albin also had received physical possession of the Mercury prior to delivering it to Hammond. Although Motorists Mutual argues that Albin was not an owner under the second definition because it was not in physical possession of the car at the time of the accident, the definition does not explicitly require an owner to be in present possession, only that the owner "has received" physical possession at some point in time. The definition's use of the present perfect tense "has described" makes sense in the context of how dealers do business. For example, a dealer does not cease to own a car on its lot merely because it permits a customer to take the car for a test drive.

In this case, Albin had a statutory duty not to relinquish the Mercury, which it owned by virtue of purchasing and receiving it from Swope, without first obtaining proof of insurance from Hammond. By the same token, Hammond, who had no insurance, had no legal right under the titling statutes to take possession of the Mercury from Albin. Therefore, Albin permitted Hammond to leave the lot with its car, even assuming that Hammond had an ownership interest in the car by virtue of the law of sales. Treating Hammond as a permissive user of Albin's car under these circumstances serves "the important public policy of keeping uninsured vehicles off Kentucky highways, roads, and streets." *Auto Acceptance,* 89 S.W.3d at 401. *See also Rogers v. Wheeler,* 864 S.W.2d 892, 894 (Ky. 1993) ("The failure of [the dealer] to comply with the licensing, registration and insurance statutes clearly makes him an owner and [the individual purchaser] a permissive user.").

The district court below acknowledged that Albin's and Swope's noncompliance with their respective statutory duties "would quite possibly render both owners of the vehicle for liability insurance purposes." (J.A. 26.) Nevertheless, relying on the Kentucky Supreme Court's decision in *Progressive N. Ins. Co. v. Corder,* 15 S.W.3d 381 (Ky. 2000), the court denied UIM coverage based on its view that public policy precludes a recovery in excess of the mandatory minimum amount of coverage (a minimum which, in the court's view, excludes UIM coverage) "where a party would not be the vehicle owner under Kentucky's titling statutes but is deemed an owner for liability insurance purposes." (J.A. 27.) The court further opined that "where true ownership overlaps with ownership for liability insurance purposes, recovery is based upon actual ownership without having to resort to … public policy." *Id.* The court then held that Albin was not the actual owner because Swope had not assigned it title by the time of the accident. (J.A. 28.) Consequently, any insurance coverage for Hammond would be limited to mandatory minimum coverage. The court denied Vaniqua Hammond's claim for UIM coverage because, in the court's view, the coverage sought was "not compulsory liability insurance, but optional UIM insurance." *Id.* Since she had already recovered from the tortfeasor's insurance carrier for her tort damages, she was not entitled to UIM benefits. *Id.*

The district court's reasoning was flawed in several respects. First, the *Auto Acceptance* decision clarified that Albin was an "owner" of the Mercury as that term is defined under the titling statutes. Albin also was an owner by virtue of having received possession of the Mercury pursuant to a bona fide sale and then permitting Hammond to use the car. Accordingly, the district court's public policy concerns must be subordinated to the clear mandate of the statutory language.

Second, the Court disagrees with the district court's perception of Kentucky public policy. Although acknowledging that a dealer can become the owner of an automobile without actually acquiring title, the district court found that Swope's noncompliance with the titling statute rendered it the owner of the Mercury, and, therefore, Albin's transfer of the car to Hammond was "irrelevant." (J.A. 28.) This Court strongly disagrees. Regardless of Swope's statutory duties, Albin had an independent duty to Hammond and the public in connection with the transaction, namely, the duty to obtain proof of insurance from Hammond before delivering the car to her. By failing to do so, Albin permitted an uninsured driver to take to the road. Accordingly, public policy requires that Albin bear the social costs for its non-compliance, in the form of insuring the risk that it unlawfully imposed on Kentucky drivers and passengers. Motorists Mutual counters that this case really involves Albin's alleged duty to protect uninsured drivers like Hammond from their own failure to comply with the law prohibiting driving without insurance. The injured party in this case, however, was not the uninsured driver, but the driver's daughter, who just as easily could have had no familial relationship with the driver.

Third, the district court incorrectly described UIM coverage as optional insurance, thereby precluding Vaniqua Hammond's recovery beyond recovery for tort liability. In fact, since Albin elected UIM coverage and paid its premiums, UIM coverage for Vaniqua Hammond (an "insured," as defined by the policy) was mandatory. *See Coots v. Allstate Ins. Co.,* 853 S.W.2d 895, 898 (Ky. 1993) (noting that underinsured motorist coverage is a mandatory contractual obligation to the insured, just like compulsory tort liability insurance under Ky. Stat. Ann. § 304.39-110, because "the automobile insurer is *required by statute* to provide such coverage") (emphasis in original). Thus, the only relevant question is whether Albin owned the Mercury for purposes of triggering insurance coverage to Vaniqua

Hammond under its garage coverage policy. Since Vaniqua Hammond was occupying the vehicle that Albin owned at the time of the accident, she was an insured who was contractually entitled to UIM benefits under the plain terms of the policy.

### IV.

To summarize, had Swope delivered clear title to Albin at the time Albin took possession of the Mercury and/or notified the county clerk of the transfer to Albin within 15 days, there is no question that ownership would have passed to Albin. Instead, the actual title remained with Swope. Albin knowingly perpetuated Swope's statutory violations by failing to pass clear title to Hammond at the time of delivery and committed an independent violation by failing to obtain proof of insurance before delivery. Under these circumstances, Albin was a constructive titleholder, and therefore an owner of the Mercury at the time of the Hammonds' accident. Alternatively, Albin was an owner of the car under the second statutory definition because it had purchased the car from Swope, took possession of it and then permitted Hammond to use the car even though she was legally prohibited from doing so. Because Albin owned the car at the time of the accident, Albin's insurance policy entitled Vaniqua Hammond to UIM insurance benefits.

For these reasons, the district court's grant of summary judgment in favor of Motorists Mutual and its denial of reconsideration are hereby **REVERSED** and the related declaratory judgment is **VACATED.** This case shall be **REMANDED** for proceedings consistent with this opinion.